Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us.  Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
June 1, 2020

**2020 CO 47**

**No. 20SA87,** *In Re the Marriage of Wollert*—**Motion to Restrict Parenting Time—When a Hearing Must Be Held—Particularity Requirement.**

In this original proceeding, the supreme court considers when a motion to restrict parenting time pursuant to section 14-10-129(4), C.R.S. (2019), requires a hearing within fourteen days of the filing of the motion.  The court holds that the particularity requirement in C.R.C.P. 7(b)(1) provides the proper standard to review a section 14-10-129(4) motion.  Because the respondent's motion to restrict parenting time was sufficiently particular under Rule 7(b)(1), the supreme court concludes that section 14-10-129(4) required a hearing on that motion within fourteen days.  Accordingly, the supreme court concludes that the magistrate erred in not holding a hearing and that the district court erred in adopting the magistrate's order.

**2020 CO 47**

**Supreme Court Case No. 20SA87**
*Original Proceeding Pursuant to C.A.R. 21*
Douglas County District Court Case No. 06DR382
Honorable Andrew Baum, Judge

**In Re the Marriage of**

**Petitioner:**

Heidi A. Wollert,

**and**

**Respondent:**

Francis F. Joseph.

**Rule Made Absolute**
*en banc*
June 1, 2020

**Attorneys for Petitioner:**
Law Offices of Rodger C. Daley
Rodger C. Daley
Kerry Lego
Carrie Vonachen
Dorian Geisler
  *Denver, Colorado*

**Attorneys for Respondent:**
Fourth Street Law, LLC
Christopher J. Linas
Caroline C. Cooley
  *Castle Rock, Colorado*

**Attorneys for Douglas County District Court:**
Philip J. Weiser, Attorney General
Emily B. Buckley, Assistant Attorney General
    *Denver, Colorado*

**JUSTICE SAMOUR** delivered the Opinion of the Court.
**JUSTICE BOATRIGHT** dissents, and **JUSTICE HART** joins in the dissent.

¶1 The highly contentious marriage dissolution case before us today has been active for more than fourteen years and has an astonishing six hundred and fifty docket entries. Through it all, the parties have shown an utter unwillingness to co-parent. Making no secret of the disdain they have for each other, they continue to fight over their son, who is now thirteen.

¶2 We, of course, are under no illusion of being able to bring the parties' protracted dispute to a merciful end. But we nevertheless chose to exercise our original jurisdiction in this case because the C.A.R. 21 petition filed by Francis F. Joseph ("Father") presents a rare opportunity to address a legal question of public importance that arises with some frequency in domestic relations cases: When does a motion to restrict parenting time ("motion to restrict") pursuant to section 14-10-129(4), C.R.S. (2019), require a hearing within fourteen days of the filing of the motion?[1]

¶3 A magistrate in Arapahoe County District Court applied the analytical framework espoused by the court of appeals in *In re Marriage of Slowinski*, 199 P.3d 48 (Colo. App. 2008), and found that no hearing was required on Father's motion to restrict. She concluded that, taking all of the allegations in the motion at face

---

[1] Section 14-10-129(4) provides that a motion to restrict parenting time "which alleges that the child is in imminent physical or emotional danger . . . shall be heard" within fourteen days. *Id.*

3

value, "there [was] no set of facts or circumstances that could give rise to the conclusion that the child [was] in imminent physical or emotional danger." On appeal, the district court sided with Heidi A. Wollert ("Mother") and adopted the magistrate's order.

¶4     We now overrule *Slowinski* and hold that the particularity requirement in C.R.C.P. 7(b)(1) provides the proper standard to review a section 14-10-129(4) motion. Applying Rule 7(b)(1), we conclude that Father's motion was sufficiently particular to require a hearing within fourteen days. Accordingly, we make the rule absolute.

## I. Procedural History

¶5     In April 2006, approximately five months after the parties' wedding, Mother filed a petition for dissolution of marriage. She was pregnant at the time. In December 2007, the court entered a dissolution decree. Rather than bring finality to this action, though, the decree seemed to serve as a springboard for more litigation. During the last twelve-plus years, the parties have raised myriad issues revolving around their son. As a result, three Child and Family Investigators, a Parental Responsibility Evaluator ("PRE"), two reintegration therapists, and other professionals have been involved in the case.

¶6     The parenting order currently in effect, which was entered in February 2015, provides that Mother has parenting time except for every other weekend and

4

every other Wednesday overnight, when Father has parenting time. In December 2016, when the child was ten, the district court expressed concern about "a child th[at] young" having a very negative attitude toward Father for no apparent reason. Determining that "[i]mmediate therapeutic" intervention was required, the court appointed Dr. Karen Jamieson Darr, a reintegration therapist, to work with Father and son. Dr. Darr accepted the appointment and provided reintegration therapy until April 2018 when, for personal reasons, she could no longer continue offering her services in this case.

¶7     A couple of months later, in June 2018, the court appointed Sharon Feder, M.S., as the new reintegration therapist. In April 2019, while the reintegration therapy was still ongoing, Father filed a motion to modify and enforce parenting time ("motion to modify") pursuant to sections 14-10-129(1) and 14-10-129.5, C.R.S. (2019). Father asserted that Mother was alienating the child from him in several ways, including by making unfounded allegations about him being "an abduction threat." He reminded the court that before the marriage was dissolved, the PRE had indicated that "Mother behaves as if the child is her possession, to be doled out to the father as she sees fit," and that she "expends much effort to limit and control the time father has with his child," going "so far as to agree it would be good if [Father]," whom she treated as nothing more than a "semen donor," were deported. And, continued Father, the PRE had predicted at that time that

5

Mother was "unlikely to change." According to Father, the child was refusing to see him during much of his scheduled parenting time as a result of Mother's behavior. Father requested an expedited hearing on his motion to modify.[2]

¶8 In November 2019, approximately seventeen months into her reintegration therapy with Father and son, Ms. Feder issued a four-page, single-spaced "Treatment Summary of Reintegration Therapy" ("Summary"), providing notice that she was terminating her services based on "the lack of positive results of treatment and the digression it ha[d] taken" in recent months. She felt that "more specialized treatment" was needed.

¶9 Ms. Feder noted that Father and son seemed to have had a healthy relationship when the son was younger and that Father had never emotionally or physically abused or neglected him. She added that Dr. Darr had made a similar assessment. But, observed Ms. Feder, during the previous seventeen months, Father had not had "a relationship with the child outside [her] office." Ms. Feder believed that whenever she started to make progress, the therapy would inexplicably "slow down or take a step backwards." She pointed out that the same

_____

[2] The magistrate informed the parties that she would not set the motion to modify for a hearing until they completed mediation. Instead of promptly scheduling mediation, the parties continued the initial status conference on the motion. Father then sought to bifurcate his motion, contending that the mediation order could only apply to his request to modify and that he was entitled to an expedited hearing on his request to enforce. The motion to modify is still pending.

6

phenomenon had occurred during Dr. Darr's therapy. Ms. Feder was convinced that Mother was responsible for bringing any progress to a halt and regressing the Father-son relationship. She opined that Mother was "alienating the child from his father," something Dr. Darr had also witnessed.

¶10 In eighteen bullet points, Ms. Feder listed her reasons for determining that Mother was engaging in "severe parental alienation." Ms. Feder remarked that Mother had "very strong negative feelings" about Father, which Mother had passed on to the child and which influenced what the child thought about his Father. As an example, Ms. Feder stated that Mother had made numerous unfounded allegations of child abuse against Father, which is common among parents who engage in alienation. Ms. Feder mentioned that the child did not want a relationship with Father, a "classic sign[] of alienation." In Ms. Feder's view, the child's rationalization for hating Father was "absurd" and "flimsy."

¶11 Significantly, Ms. Feder concluded that the child was "in imminent psychological and emotional danger" as a result of Mother's severe parental alienation. In Ms. Feder's assessment, this constituted "child abuse" and could lead to severe psychological dysfunction, which, in turn, placed the child at risk of legal issues and "problems with interpersonal relationships, substance abuse, . . . lack of empathy, low self-esteem, anxiety, depression, behavioral issues, . . . lack of impulse control, on-going anger issues, sleep and eating

7

disorders, self-destructive behaviors and/or suicidal ideation." Ms. Feder felt that "immediate intervention by the court" was necessary.

¶12 Upon receiving Ms. Feder's Summary, Father immediately filed a verified emergency motion to restrict pursuant to section 14-10-129(4). His motion incorporated by reference the contents of the Summary in their entirety. Father specifically requested that a hearing be held within fourteen days.

¶13 Mother filed a response opposing the motion. She argued that Father had been accusing her of parental alienation since the child was in utero. Mother's motion was accompanied by a letter from the child's individual therapist. In stark contrast to Ms. Feder, who believed that the status quo placed the child in imminent psychological and emotional danger, the child's individual therapist stated that the child "may well commit self-harm" if Father were to become the primary custodial parent.

¶14 In Father's reply, his counsel represented that she was familiar with the child's individual therapist. She questioned his credibility, alleging that his professional liability insurance had been dropped as a result of the number of complaints and lawsuits filed against him. Counsel also referenced a prior case in which the child's individual therapist had aligned himself with a parent who engaged in alienation and ultimately murdered his child.

8

¶15     The magistrate denied Father's motion to restrict without holding a hearing. Relying on *Slowinski*, she found that the motion was "facially insufficient" because even "taking all of the allegations . . . as true, there [was] no set of facts or circumstances that could give rise to the conclusion that the child [was] in imminent physical or emotional danger."

¶16     Father timely petitioned the district court for review of the magistrate's order pursuant to C.R.M. 7(a). Besides repeating the allegations in his motion to restrict, he informed the court that in an unrelated filing Mother had recently asserted that the child was threatening to commit suicide if he were forced to see Father. Father told the court that this allegation was alarming and underscored the need for the court's immediate intervention.

¶17     Unpersuaded by Father, the district court adopted the magistrate's order. It found that the denial of Father's motion without a hearing was not "clearly erroneous."[3] Additionally, it noted that Father's motion to modify was still pending and that, "[u]pon a full hearing" on that motion, "the Magistrate [would] be able to assess whether the child [was] being endangered through alienation"

---

[3] In a brief filed in our court, the district court admits that it mistakenly reviewed for "clear error" instead of conducting "de novo" review. We agree. Because Father's petition raised a question of law (the interpretation of a statutory provision), the district court's review should have been de novo. *Cf. People in Interest of A.J.L.*, 243 P.3d 244, 249 (Colo. 2010).

and enter any appropriate orders.  Father then filed a C.A.R. 21 petition, and we issued a rule to show cause.[4]

## II.   Original Jurisdiction

¶18    It is entirely within our discretion to exercise our original jurisdiction under Rule 21.  *In re Estate of Feldman*, 2019 CO 62, ¶ 11, 443 P.3d 66, 69; *accord* C.A.R. 21(a)(1) ("Relief under this rule . . . is a matter wholly within the discretion of the supreme court.").  Rule 21 provides an "extraordinary remedy that is limited both in its purpose and availability."  *Rademacher v. Greschler*, 2020 CO 4, ¶ 20, 455 P.3d 769, 772.  As relevant here, we have exercised our discretion under Rule 21 to review cases that "raise issues of significant public importance that we have not yet considered."  *Id.* (quoting *Wesp v. Everson*, 33 P.3d 191, 194 (Colo. 2001)).

¶19    We have never had occasion to interpret section 14-10-129(4).  And given the emergency nature of motions to restrict, issues that arise under that statutory provision are likely to evade our review.  As such, we deem this a rare opportunity

---

[4] Eight days after the district court adopted the magistrate's order, the parties attended mediation on Father's motion to modify.  As has been par for the course in this case, the parties could not reach an agreement on that motion.  The day after the failed mediation session, the magistrate's clerk contacted the parties about the motion to modify and informed them that she could schedule a three-hour hearing or they could file a motion asking for a two- or three-day hearing.  Because Father wanted to avoid the extensive delay required to set a two- or three-day hearing, and because he was convinced that a three-hour hearing would not be sufficient and that a motion to modify was not an adequate vehicle to address the concerns raised by Ms. Feder, Father filed his Rule 21 petition instead.

to construe section 14-10-129(4). Because this is an issue of first impression that is of public importance in our state, and because we disagree with the standard articulated in *Slowinski* to determine when a motion to restrict requires a hearing within fourteen days, we conclude that exercise of our original jurisdiction is appropriate here.

## III. Standard of Review and Principles of Statutory Construction

¶20 "Statutory interpretation presents a question of law that we review de novo." *Colo. Med. Bd. v. McLaughlin*, 2019 CO 93, ¶ 22, 451 P.3d 841, 845. When construing a statute, we seek to give effect to the legislature's intent. *Id.* We are required to read statutory words and phrases in context and according to their plain and ordinary meaning. *Id.* If the language of a statute is clear, we apply it as written without resorting to other tools of statutory construction. *Id.*

## IV. Analysis

¶21 Father maintains that the magistrate erred in denying his motion to restrict without a hearing. We agree.

¶22 Section 14-10-129(4) provides:

> A motion to restrict parenting time or parental contact with a parent which alleges that *the child is in imminent physical or emotional danger* due to the parenting time or contact by the parent *shall be heard* and ruled upon by the court *not later than fourteen days after the day of the filing of the motion.* Any parenting time which occurs during such fourteen-day period after the filing of such a motion shall be supervised by an unrelated third party deemed suitable by the court

11

or by a licensed mental health professional, as defined in section 14-10-127(1)(b). This subsection (4) shall not apply to any motion which is filed pursuant to subsection (3) of this section.

(Emphases added.) Like the parties, we read the plain language of this statutory provision as requiring the court to hold a hearing no later than fourteen days after the filing of a motion to restrict that complies with the allegation-based condition identified. But how does a district court discern whether a motion to restrict satisfies the condition set forth in the statutory provision? Stated differently, what standard must the court use to determine whether a motion to restrict adequately "alleges that the child is in imminent physical or emotional danger due to the parenting time or contact by the parent"?

¶23    In *Slowinski*, a division of the court of appeals correctly concluded that it is improper for a court to decline to hold a hearing based on an assessment of the credibility of the allegations in a motion to restrict. 199 P.3d at 54. Resolving a section 14-10-129(4) motion "on the basis of credibility without a hearing is not in conformity with the statute and is incompatible with the purpose of the statute." *Id.* Moreover, we have previously cautioned trial courts about the perils of making credibility determinations on paper. After all, "[a] cold record is a poor substitute for live testimony." *People v. Scott*, 600 P.2d 68, 69 (Colo. 1979). That is precisely why "[f]actfinding is the basic responsibility of district courts, rather than appellate courts." *Pullman-Standard v. Swint*, 456 U.S. 273, 291 (1982) (quoting

12

*DeMarco v. United States*, 415 U.S. 449, 450 n.1 (1974)). The very "sanctity of trial court findings is derived from the recognition that the trial judge's presence during the presentation of testimonial evidence provides an unparalleled opportunity to determine the credibility of the witnesses and the weight to be afforded the evidence which is before the court." *Page v. Clark*, 592 P.2d 792, 796 (Colo. 1979).

¶24 Where we part ways with the *Slowinski* division is in its conclusion that a motion to restrict may be denied without a hearing if it is "facially insufficient," meaning "that, after taking all the allegations in the . . . motion as true, there is no set of facts or circumstances that could give rise to the conclusion that the [child is] in imminent danger of physical or emotional injury." 199 P.3d at 54. This standard appears to have been modeled after the standard used by our courts at the time to resolve C.R.C.P. 12(b)(5) motions to dismiss for failure to state a claim upon which relief can be granted. *See, e.g., Cherokee Metro. Dist. v. Upper Black Squirrel Creek Designated Ground Water Mgmt. Dist.*, 247 P.3d 567, 572–73 (Colo. 2011) (indicating that in reviewing "a motion to dismiss under C.R.C.P. 12(b)(5), the court must take all allegations in the complaint as true" and abstain from dismissing the complaint "unless it appears beyond a doubt that a plaintiff can prove no set of facts in support of her claim which would entitle her to relief").[5]

---

[5] Guided by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in *Warne v. Hall*, 2016 CO 50, ¶¶ 1–2, 373 P.3d 588, 589–90, we embraced a new standard to resolve motions to dismiss under Rule 12(b)(5): A

13

¶25 Earlier this term we held that while "Rule 12(b)(5) explicitly sets forth 'failure to state a claim upon which relief can be granted' as a defense 'to a claim for relief in any *pleading*,' it has no application" in the context of a C.R.C.P. 16.2(e)(10) *motion* to reopen a final dissolution decree. *In re Marriage of Durie*, 2020 CO 7, ¶ 19, 456 P.3d 463, 469 (emphasis added) (quoting C.R.C.P. 12(b)). We reasoned that a motion is not a pleading and, thus, Rule 12(b)(5) was inapposite. *Id.* at ¶¶ 19–20, 456 P.3d at 469. Instead, we concluded that a Rule 16.2(e)(10) post-decree motion must comply with C.R.C.P. 7(b)(1), which provides that, "except when made during a hearing or trial, a motion 'shall be made in writing, shall state with particularity the grounds thereof, and shall set forth the relief or order sought.'" *Id.* at ¶ 23, 456 P.3d at 469 (quoting C.R.C.P. 7(b)(1)).

¶26 We see no reason to usher in a different standard for motions to restrict under section 14-10-129(4). As we recognized in *Durie*, "Rule 7(b) controls motions practice in civil cases," *id.*, and domestic relations cases are "proceedings of a civil nature," *id.* at ¶ 14, 456 P.3d at 468 (quoting C.R.C.P. 1(a)). Because there is no basis to immunize a motion to restrict from Rule 7(b), we now hold that such a motion must comply with the particularity requirement in paragraph (1) of that

complaint must contain sufficient factual allegations which, when accepted as true, state a claim for relief that is plausible on its face.

14

rule—that is, it must identify *with specificity* the grounds in support of it or the reasons relief is warranted.

¶27    Simply parroting the statutory buzzwords—"the child is in imminent physical or emotional danger"—will not suffice.  Rather, a motion to restrict must state *with particularity* the bases for seeking to restrict parenting time, and if it fails to do so, the court should deny it outright without a hearing.  But if a motion to restrict does satisfy the particularity requirement in Rule 7(b)(1), it "shall be heard . . . not later than fourteen days after the day of the filing of the motion." § 14-10-129(4).  In other words, when a motion meets Rule 7(b)(1)'s particularity requirement, the statute gives the court no choice but to hold a hearing within fourteen days.  The court may not resolve such a motion without a hearing.

¶28    We realize that Rule 7(b)(1) does not set an especially demanding standard. Still, we're not overly concerned that today's opinion will yield a noticeable increase in section 14-10-129(4) hearings.  After all, *Slowinski*, which has been on the books for a dozen years, did not set a high bar either.  It required courts to: (1) assume that all of the factual allegations in a motion to restrict were true, and (2) hold a hearing within fourteen days unless no set of facts or circumstances existed under which the moving party would be entitled to relief.  199 P.3d at 54.

¶29    And much like the *Slowinski* division conceded that the test it endorsed was subject to abuse, *id.* at 55, we acknowledge that Rule 7(b)(1)'s particularity

15

requirement is not abuse-proof either. Of course, any risk of gamesmanship is magnified by the fact that the filing of a motion to restrict triggers an immediate change in parenting time: During the fourteen-day timeframe referenced in section 14-10-129(4), "[a]ny parenting time . . . shall be supervised by an unrelated third party deemed suitable by the court or by a licensed mental health professional." But section 14-10-129(5) reflects that none of this was lost on the legislature. Under subsection (5), if the district court finds that a motion to restrict is "substantially frivolous, substantially groundless, or substantially vexatious," it is *required* (as opposed to merely being *empowered*) to order "the moving party to pay the reasonable and necessary attorney fees and costs of the other party." § 14-10-129(5); *see also People v. Rolfe*, 962 P.2d 981, 982 (Colo. 1998) (observing that after holding a hearing on a motion to restrict, the district court had assessed attorney fees against the moving party for making a number of material misrepresentations about the imminence of harm to the child).

¶30    Separate and apart from subsection (5), we draw comfort from our trust in attorneys who practice in Colorado. Like the *Slowinski* division, we "have considerable confidence that practicing attorneys, aware of the implications" of a section 14-10-129(4) motion "and the value of their own credibility, will be circumspect in filing such motions." *Slowinski*, 199 P.3d at 55. Notably, in *Rolfe*,

16

where the attorney was not so circumspect, he was publicly censured for filing an improper motion to restrict.[6] 962 P.2d at 983.

¶31 The reality is that there is no perfect methodology. In the end, though, it seems clear to us that the General Assembly was willing to accept the risk of gamesmanship in order to protect the lives and health of children. Section 14-10-129(4) attempts to accommodate the rights of each parent vis-à-vis parenting time while prioritizing the rights of children to be safe and protected from imminent physical or emotional danger. Whether the legislature struck the most optimal balance, or even a proper balance, is a policy question wholly outside our province. Our job today is to interpret and apply section 14-10-129(4), not to discern whether we can draft a better statutory provision.

## V. Application

¶32 Turning now to Father's motion to restrict, the question remains whether it complied with Rule 7(b)(1)'s particularity requirement. We have little difficulty concluding that it did.

¶33 In his motion to restrict, Father jogged the district court's memory about the concern it had expressed a few years earlier based on the child having such a

---

[6] We recognize that neither subsection (5) nor the significance that credibility has for attorneys may be an effective disincentive when both parties are self-represented. However, nothing in section 14-10-129 limits the court's ability to control the proceedings, including by imposing other appropriate sanctions.

negative attitude toward him without apparent reason. In fact, noted Father, the court was so troubled in December 2016 that it ordered "[i]mmediate therapeutic" intervention. Father's motion then incorporated by reference the Summary, where Ms. Feder explained in granular detail why the court's immediate intervention was necessary. According to Ms. Feder: (1) she was convinced that Mother had been engaging in severe parental alienation for thirteen years—essentially since the child's birth; (2) her predecessor, Dr. Darr, had reached a substantially similar determination; (3) Mother's actions had prevented Father and son from making progress in the reintegration therapy ordered by the court; (4) Mother's behavior was responsible for the Father-son relationship regressing; (5) Mother's conduct constituted child abuse; (6) the child was "in imminent psychological and emotional danger[] because of [Mother's] alienation"; and (7) if the court failed to intervene, the child was at risk of suffering severe psychological dysfunction.

¶34 Father's motion to restrict clearly met Rule 7(b)(1)'s particularity requirement. Accordingly, we conclude that the magistrate erred in denying the motion without a hearing and that the district court erred in adopting her order.[7]

---

[7] Even applying *Slowinski*, the magistrate and the district court should have arrived at the same result we do after applying Rule 7(b)(1). Taking at face value the allegations in Father's motion to restrict, including the detailed contents of the Summary, could not have allowed the magistrate or the district court to conclude that there was no set of facts or circumstances under which Father would be entitled to restrict Mother's parenting time under section 14-10-129(4).

¶35 We understand why the magistrate and the district court were tempted to view Father's motion to restrict with a cynical eye. This case has a long and tortuous history, there is no love lost between the parties, issues related to parenting time have been fiercely litigated, Father's motion to modify (which was also based on Mother's alleged alienation) was pending, and Father had been trying to obtain a hearing on that motion to no avail. But the motion to restrict included a therapist's opinion that the child was "in imminent psychological and emotional danger" as a result of Mother's conduct during her parenting time. And the therapist backed her opinion in the comprehensive Summary Father submitted with his motion.

¶36 Mother hitches her wagon to the word "imminent" in section 14-10-129(4), averring that the magistrate correctly denied Father's motion without a hearing because Ms. Feder's Summary did not establish that the emotional danger to the child was imminent. We are unpersuaded. Section 14-10-129(4) requires a party to allege, not prove, imminent physical or emotional danger, and Father's motion advanced *with great specificity* an allegation of imminent emotional danger.

¶37 We are keenly aware that the parties' discord is fourteen years old and counting. But that doesn't forever foreclose a good-faith allegation of imminent emotional danger to the child. Indeed, Ms. Feder alleged in her Summary: that Mother's parental alienation had reached a boiling point and was having "serious

19

and severe psychological and emotional effects on the child as well as the [father]/child relationship"; had now placed the child "in imminent psychological and emotional danger"; will result in "imminent psychological and emotional harm" to the child; will impact the child's ability "to have healthy interpersonal relationships"; and can lead to "severe psychological dysfunction" and cause significant problems as the child continues to grow. And, around the time Mother opposed Father's petition for review by the district court, she herself told the district court that the child had threatened to commit suicide if forced to be with Father.

¶38 These are not fourteen-year-old, same-old-same-old allegations masquerading as fresh allegations of imminent emotional danger. Nor are they enough-is-enough allegations that might be better suited to be addressed through a motion to modify. To our knowledge, it is the first time in these proceedings that such allegations have been advanced, let alone corroborated by a voluminous expert report containing factual support. The magistrate and the district court were nevertheless unmoved, apparently because they found Father's allegations incredible. And therein lies their error.

¶39 In deciding how to proceed upon receiving a motion to restrict, there is a difference between, on the one hand, a judicial officer evaluating under Rule 7(b)(1) the particularity of an allegation of imminent physical or emotional danger,

and on the other, a judicial officer assessing whether an allegation of imminent physical or emotional danger that satisfies Rule 7(b)(1) is really true. The former is required; the latter is improper. Because Father's motion met Rule 7(b)(1)'s particularity requirement, the magistrate and the district court could not judge the credibility of Father's allegation of imminent emotional danger without a hearing. Put differently, the magistrate and the district court could not dispense with a hearing by surmising that when Ms. Feder opined that the child was "in imminent . . . emotional danger," she didn't really mean or understand what she was saying and that, instead, all she intended to convey was that Mother's conduct was extremely serious.

¶40 Section 14-10-129(4) requires courts to err on the side of protecting children, even if that means holding a hearing on a Rule 7(b)(1)-compliant motion that, at least on paper, may not appear to have a great chance of prevailing. It follows that where, as here, a motion to restrict alleges with particularity that a child is in imminent physical or emotional danger as a result of a parent's contact or parenting time, the court must hold a hearing within fourteen days of the filing of the motion. To borrow from Aesop's fable, when a motion to restrict alleges with particularity that a child is in imminent physical or emotional danger, the court cannot postulate that the moving party seems to be crying wolf. For if the court errs in holding a hearing, the worst-case scenario is that a hearing is improperly

held.  But if the court errs in denying a hearing, the worst-case scenario is that a child may sustain injury or death.

¶41     Of course, it is possible that Father is simply crying wolf.  But given what's at stake, the district court cannot take the risk the villagers did in the fable the third time the shepherd boy called out for help.  Because Father's motion to restrict meets the particularity requirement in Rule 7(b)(1), the court must hold a hearing as soon as possible after it receives the case back on remand.[8]  Following the hearing, if the court finds that Father's motion to restrict was substantially frivolous, substantially groundless, or substantially vexatious, it must order him to pay the attorney fees and costs incurred by Mother in defending against the motion.

## VI.  Conclusion

¶42     We conclude that the magistrate erred in denying Father's motion to restrict without holding a hearing and that the district court erred in adopting the

---

[8] To be clear, nothing in this opinion should be understood as requiring a lengthy hearing to unpack the parties' litigious history.  Nor does this opinion require the district court to resolve the parental alienation issues raised by the motion to modify.  Rather, we simply rule that the court must hold an *emergency hearing* to determine whether immediate action is required to protect the child from imminent emotional danger.  Subject to due process concerns, the court retains considerable discretion over the duration of the hearing, including by controlling the mode and order of the interrogation of witnesses and the presentation of evidence.  *See* CRE 611(a).

magistrate's order.  Accordingly, we make the rule to show cause absolute and remand for further proceedings consistent with this opinion.

**JUSTICE BOATRIGHT** dissents, **JUSTICE HART** joins in the dissent.

JUSTICE BOATRIGHT, dissenting.

¶43    There is a difference between imminent harm and "enough is enough."  The former involves immediacy because something is about to happen; the latter reflects frustration over the fact that bad behavior continues and a situation is not getting better.  Father conflates the two by mistaking ongoing parental alienation with an emergency warranting the extreme consequences arising from emergency motions under section 14-10-129(4), C.R.S. (2019).  To be crystal clear, I know that parental alienation is extremely serious and should not be minimized, and, if Father's allegations of parental alienation in his emergency motion are true, the child here has been subjected to harm from the time that he was born.  But in my view, Father's allegations, even taken as true, lead to one conclusion: enough is enough.  The allegations in Father's motion need to be addressed; however, section 14-10-129(4) is not designed for this type of allegation of long-term harm.  Instead, by its plain language, it is designed for *imminent* harm.  In the majority's desire to use this case to clarify the standard for ruling on section 14-10-129(4) motions, it fails to recognize that this case, on its core facts, simply does not involve imminent harm.  And in doing so, it has prevented this case from being resolved in the interim: The proceedings have stopped, and the child remains in the allegedly injurious environment from which Father was seeking to extricate him.  Because I believe that (1) this court should not have issued a rule to show cause and

1

(2) Father's emergency motion does not meet the particularity standard announced by the majority today, I respectfully dissent.

¶44 To begin, this court should not have exercised its discretionary jurisdiction under C.A.R. 21 in this case. The majority acknowledges that the facts of this case are less than ideal but suggests that the "public importance" of the standard for section 14-10-129(4) motions warrants this court's discretionary C.A.R. 21 intervention, which is "limited to extraordinary circumstances where there is no other adequate remedy." *People in Interest of A.H.*, 216 P.3d 581, 583 (Colo. 2009). Rather than meeting this standard, however, this case presents extraordinarily apt circumstances for exercising our discretion under C.A.R. 21 to *not* take this case because there is another, *even more adequate* remedy available: Father's motion to modify and enforce parenting time ("motion to modify"), which was pending in the same court when Father filed his emergency motion and which contains nearly identical allegations about Mother's long-term parental alienation as those in the emergency motion.

¶45 In his motion to modify, Father alleges, among other things, that Mother has "engaged in a pattern of alienating behavior throughout the case" and that the "alienation has been so persistent and damaging to the relationship between [Father] and the minor child[] that significantly more intervention is required than what is occurring presently." Because these allegations and the ones in the

2

emergency motion are based off the exact same long-term behavior by Mother, a meaningful remedy for the allegations made in the motion to modify would invariably equate to a remedy for the allegations made in the emergency motion.

¶46 Importantly, the parties and trial court were in the process of trying to set the motion to modify for a hearing when this court issued a rule to show cause. In emails with the magistrate's chambers, the parties both appeared to agree that the motion to modify needed a multiday hearing.[1] The process of setting a hearing came to a halt when Father filed this action and this court issued a rule to show cause because all the underlying proceedings were stayed as a result of the rule to show cause, pursuant to C.A.R. 21. *See* C.A.R. 21(f)(2) ("Issuance of a rule to show cause by the supreme court automatically stays all underlying proceedings until final determination of the original proceeding in the supreme court."). Thus, because this court chose to exercise its discretionary jurisdiction, the motion to modify has been left without a hearing date.

---

[1] The magistrate originally ordered the parties to complete mediation before setting the motion for a hearing, but the parties' attempt at mediation was apparently unsuccessful, and a hearing was yet to be set. At this point, even a cursory reading of the history of the case evinces that an order for mediation was not warranted and would not be successful. In fact, the parties' attempts at mediation have only caused unnecessary delay.

¶47 Getting that motion to modify before a judicial officer in a meaningful hearing is the only adequate remedy that exists in this case because the emergency motion will not produce the type of meaningful hearing Father's allegations warrant. Due to the fourteen-day hearing requirement under section 14-10-129(4), a hearing set in response to a section 14-10-129(4) motion is bound to be short. I can only rely on my own experience regarding these types of hearings, but I would assume the emergency hearing likely would not exceed two hours and possibly would be held by phone. But these allegations are simply not going to find any resolution in such a short amount of time. This case has been active for fourteen years, and Father's allegations are complex. While Father would come to a hearing on the matter equipped with an expert report in support of his parental alienation allegations, so too would Mother come with a report of her own written by the child's longtime individual therapist in support of the opposite. In other words, this dispute will likely amount to (1) a dissection of Mother's and Father's actions over the lifetime of the child, perhaps beyond; and (2) a battle of the experts. I simply cannot fathom how the magistrate can conduct a meaningful hearing within fourteen days of receiving jurisdiction over the case, let alone how she can try to craft an adequate order.

¶48 Notably, even the parties appear to agree that nothing short of a multiday hearing would suffice to resolve these allegations. In emails between the parties

4

and the magistrate's chambers regarding Father's motion to modify, Mother's counsel wrote, "I believe 1 day will not be sufficient for this Hearing. At a minimum there will be 2 experts and the parties. I am assuming some lay witnesses as well." Father's counsel at the time later responded, "The parties have conferred [and] are in agreement that two days are needed for this hearing." Thus, Father's motion to modify offers the only meaningful remedy that a section 14-10-129(4) hearing never will.

¶49 In addition to delaying a meaningful remedy, this court's issuance of a rule to show cause comes with other practical consequences due to the particular circumstances of this case. Chief among these consequences is that the child is in an imminently dangerous situation if Father's expert is to be believed. Yet due to the required stay on the underlying proceedings the child remains there, which according to his expert is potentially tragic.

¶50 Furthermore, it is entirely unclear what is actually going to happen when the magistrate complies with the majority's direction and enforces the requirements of the statute. Section 14-10-129(4) dictates that "[a]ny parenting time which occurs during such fourteen-day period [between the motion's filing and a hearing] shall be supervised by an unrelated third party deemed suitable by the court or by a licensed mental health professional." As soon as this case is remanded, then, all of Mother's parenting time must be supervised until a hearing

5

on the matter can be held. And recall, the child resides exclusively with Mother. Who will do the supervising? Will the child be removed from Mother's home? If so, where does he go? How will the trial court try to prevent the child—who has apparently threatened suicide at the very thought of seeing Father—from reacting in a dangerous manner to such a dramatic change in circumstances? Those questions are unanswered. I understand that these issues are beyond the issue at hand, but these practical considerations should be taken into account when we decide to exercise our discretionary jurisdiction in the first place.

¶51 But this court did issue a rule to show cause, and the majority establishes a new standard under which trial courts should assess section 14-10-129(4) motions: the C.R.C.P. 7(b)(1) particularity standard. Maj. op. ¶ 4. I see no problem with this standard so long as the judicial officer retains sufficient discretion to reject a petition that does not meet the statutory criteria. I fear that the majority's application of the particularity standard here, however, takes away such discretion.

¶52 By its plain language, any emergency motion filed under section 14-10-129(4) must contains allegations of harm that are imminent. § 14-10-129(4) ("A motion to restrict parenting time or parental contact with a parent which alleges that the child is in *imminent* physical or emotional danger due to the parenting time or contact by the parent shall be heard . . . ." (emphasis added)).

6

Under this statute's exacting standard, it is not enough to allege, even with particularity, harm that is serious, longstanding, or concerning alone. It must also be imminent.

¶53 The majority states that "[s]imply parroting the statutory buzzwords—'the child is in imminent physical or emotional danger'—will not suffice." Maj. op. ¶ 27. But it then goes on to accept Father's motion, which does exactly that. True, Father's expert describes the horrific harm that she believes this child is suffering because of the alleged parental alienation, and her report uses the word "imminent." But Father's emergency motion fails to explain how the harm is imminent. The majority attempts to characterize the expert's report as stating that the situation has reached a "boiling point." Maj. op. ¶ 37. It doesn't say that. Rather, the expert report simply states that "it is [the expert's] opinion that [the] child is in imminent emotional harm as a result of Mother's ongoing alienation against Father." Additionally, the expert's report does not explain how the harm is imminent outside of stating the word "imminent":

> I believe [the child] is in imminent psychological and emotional danger, because of the alienation. This can result in severe psychological dysfunction in the child, which as they become a teenager and an adult can result in problems with interpersonal relationships, substance abuse, legal problems, lack of empathy, low self-esteem, anxiety, depression, behavioral issues, legal problems, lack of impulse control, on-going anger issues, sleep and eating disorders, self-destructive behaviors and/or suicidal ideation.

7

I want to reiterate that the possibility of the child experiencing any of these problems due to Mother's alleged parental alienation is serious and needs to be addressed. But my point is that extremely serious allegations do not equate to imminent danger allegations. For the purposes of section 14-10-129(4), that distinction is crucial.

¶54 Imminence requires that the alleged harm is threatening to occur at any moment and requires urgent action. *Black's Law Dictionary* defines imminent as something "threatening to occur immediately" or "[a]bout to take place." *Imminent*, Black's Law Dictionary (11th ed. 2019). Similarly, *Merriam-Webster Dictionary* defines imminent as "ready to take place : happening soon." *Imminent*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/*imminent* [https://perma.cc/8QLE-GQP6].

¶55 In applying section 14-10-129(4) to the circumstances of this case, Father fails to answer the essential question of how his emergency motion differs from the many allegations of parental alienation he has made previously.[2] True, the expert states in her report that the "only thing" that will help Father and child's relationship is "immediate intervention by the court with an order for the father

---

[2] Father has made allegations of parental alienation since before his child was born. In a motion for temporary orders prior to his son's birth, Father alleged that Mother had "already begun the alienation of the child from [Father] and his family."

and son to participate in a specialized treatment program like Family Bridges." But this treatment takes time. I appreciate that the expert has grave concerns about Mother's conduct and that treatment should begin as soon as possible, but her recommendation is a long-term solution, not the quick action that the emergency statute contemplates.

¶56 Yet the majority is "unpersuaded" by the argument that the emergency motion does not sufficiently establish *imminent* harm because "[s]ection 14-10-129(4) requires a party to allege, not prove, imminent physical or emotional danger." Maj. op. ¶ 37. I confess that I am confused by the majority's standard, however, because it at once instructs that parties cannot simply parrot the statutory buzzwords but then defers to the expert's use of the word "imminent." In my view, Father's expert is in effect saying, "Enough is enough, Mother's conduct needs to stop." She is not saying, "The potential harm from the parental alienation could happen at any moment and thus needs urgent action."

¶57 Because I view Father's emergency motion as simply "parroting the statutory buzzwords" of imminent emotional harm, my concern with the majority's acceptance of that motion as meeting the particularity standard is that it effectively removes the discretion of judicial officers to truly scrutinize section 14-10-129(4) motions to determine whether the allegations satisfy the statutory criteria. I am concerned that the effect of the majority opinion is that when judicial

officers merely see the words "imminent psychological or emotional harm" accompanied by an expert report, they will conclude that they do not have discretion to think critically about the underlying facts and circumstances of the case to determine the possible threat of imminence.

¶58 In my view, the magistrate here did think critically and used the appropriate amount of discretion. She looked at the allegations in Father's emergency motion and realized that these parties have been fighting about this exact same issue for fourteen years and that the emergency motion contains no new allegations from the most recent motion to modify. Knowing that, she was fully aware that the parties needed a multiday hearing and that any remedy fashioned from a section 14-10-129(4) hearing would be inadequate. Under the majority's opinion, is there ever room for a magistrate to use her discretion in this way?

¶59 In writing separately, I do not wish to imply that the allegations made by Father do not require any action at all. They are serious, and they do require action. Rather, I write separately to emphasize that magistrates and district courts should truly consider the circumstances of a particular case and determine whether a party has alleged with particularity harm that is imminent and requires the rapid, dramatic remedy of section 14-10-129(4). Magistrates and district courts should certainly err on the side of caution when ruling on section 14-10-129(4) motions; it should go without saying, but we do not want children hurt and in

10

danger. In exercising that caution, however, judicial officers should also use their discretion to determine if the harm alleged truly is imminent. I believe Father's emergency motion alleges harm that is serious and requires a multiday, in-depth hearing with experts and witnesses, and I believe that common sense tells us that granting Father's emergency motion is both impractical and may do more harm than good. Hence, I respectfully dissent.

I am authorized to state that JUSTICE HART joins in this dissent.