1
2023 CO 3M In Re The People of the State of Colorado, Petitioner In the Interest of Child: L.S., and Concerning G.L.A. and D.S. Respondents No. 22SA282
Supreme Court of Colorado, En Banc
March 6, 2023

 Rule
 Made Absolute January 23, 2023

 Original Proceeding Pursuant to C.A.R. 21 Arapahoe County
 District Court Case No. 20JV540 Honorable Don Toussaint,
 Judge

 Attorneys for Petitioner: Ronald A. Carl, Arapahoe County
 Attorney Kristi Erickson, Assistant County Attorney Aurora,
 Colorado

 Rebecca M. Taylor, Assistant County Attorney Littleton,
 Colorado

 Attorney for Child: Alison Bettenberg, Guardian ad litem
 Centennial, Colorado

 Attorneys for Respondent G.L.A.: Kapoor Law + Policy Ruchi
 Kapoor Denver, Colorado

 Attorney for Amicus Curiae Office of Respondent Parents'
 Counsel: Melanie Jordan Denver, Colorado

 No
 appearance on behalf of Respondent D.S.

 JUSTICE HOOD delivered the Opinion of the Court, in which
 CHIEF JUSTICE BOATRIGHT, JUSTICE MÁRQUEZ, JUSTICE
 GABRIEL, JUSTICE HART, JUSTICE SAMOUR, and JUSTICE
 BERKENKOTTER joined.

 OPINION

 HOOD,
 JUSTICE

 ¶1
 In this original proceeding, we consider whether the state
 satisfies its burden of proving that an appropriate treatment
 plan can't be devised for a respondent parent in a
 dependency and neglect case when the state establishes by a
 preponderance of evidence a single incident resulting in
 serious bodily injury to the child. We conclude that it does.

 I.
Facts and Procedural History

 ¶2
 The following factual background is based on the parties'
 stipulated motion for relief and the district court's
 findings of fact following the dispositional hearing on that
 motion.

 ¶3
 G.L.A. ("Mother") brought L.S., who was one year
 old at the time, to the hospital for medical treatment.
Hospital staff conducted a skeletal survey, which revealed
 that L.S. had a broken tibia; two additional fractures that
 were healing; severe bruising and swelling to his groin; and
 significant bruising on his back, face, and genitals. The
 hospital sent a referral to the Arapahoe County Department of
 Human Services, and the state filed a petition for dependent
 or neglected children in district court, alleging that Mother
 had physically abused L.S.

 ¶4
The district court adjudicated L.S. dependent or neglected.
About a month later, the court found that an appropriate
 treatment plan couldn't be devised for Mother based on
 L.S.'s serious bodily injury ("SBI"), and
 Mother appealed.

 ¶5
 Following the appellate court's dismissal of the case for
 lack of a final order, People in Int. of L.R.S., No.
 21CA432, ¶ 1 (Nov. 18, 2021), the parties filed a
 stipulated motion for relief. In the motion, Mother admitted
 that L.S. was dependent or neglected because his environment
 was injurious to his welfare, and she waived holding an
 adjudicatory hearing to determine a factual basis for her
 admission. The parties sought a dispositional hearing to
 determine whether an appropriate treatment plan could be
 devised.

 ¶6
 At the end of the state's presentation of evidence,
 Mother moved for directed verdict, asserting that the state
 had "failed . . . to prove by clear and convincing
 evidence the existence of a single incident of SBI. There has
 been no evidence regarding an appropriate treatment plan
 whatsoever." The parties debated whether proving an SBI
 alone could support a finding that no appropriate treatment
 plan could be devised.

 ¶7
The district court concluded that although the state had
 presented evidence that L.S. was adjudicated dependent or
 neglected and that he had suffered an SBI, the state
"did not prove by clear and convincing evidence that an
 appropriate treatment plan cannot be devised to address the
 unfitness of Mother . . . [and,] [s]tanding alone, proof of
 serious bodily injury is not evidence that no treatment plan
 can be devised." The court then granted Mother's
 request for directed verdict.

 ¶8
The state petitioned this court for a rule to show cause,
 which we issued.[1]

 II.
Discussion

 ¶9
We first explain this court's original jurisdiction and
 our decision to exercise it here. We then briefly discuss the
 standards that guide our review in this case and the
 framework for dependency and neglect proceedings. Finally, we
 interpret the statutory provisions at the heart of this
 dispute and conclude that the district court misinterpreted
 the law.

 A.
Jurisdiction

 ¶10
 Whether to exercise our original jurisdiction under C.A.R. 21
 is a matter wholly within our discretion. C.A.R. 21(a)(1).
But C.A.R. 21 provides "an extraordinary remedy that is
 limited in both purpose and availability." People v.
 Lucy, 2020 CO 68, ¶ 11, 467 P.3d 332, 335 (quoting
People v. Rosas, 2020 CO 22, ¶ 19, 459 P.3d
 540, 545). "Thus, in the past, we have exercised our
 original jurisdiction

 in limited circumstances, such as 'when an appellate
 remedy would be inadequate, when a party may otherwise suffer
 irreparable harm, or when a petition raises issues of
 significant public importance that we have not yet
 considered.'" People v. Rainey, 2021 CO 53,
 ¶ 9, 488 P.3d 1081, 1084 (quoting Lucy, ¶
 11, 467 P.3d at 335).

 ¶11
 This petition presents all three grounds for exercising our
 jurisdiction. First, there is not a final order that could be
 appealed. See People in Int. of E.M., L.M. &
 E.J.M., 2016 COA 38M, ¶¶ 34-35, 417 P.3d 843,
 850 (concluding that where the district court found that no
 appropriate treatment plan could be devised for the parent
 and didn't otherwise enter a disposition or terminate the
 parent-child legal relationship, there was no appealable
 order for the appellate court to review), aff'd sub
 nom. People in Int. of L.M., 2018 CO 34, 416 P.3d 875.
Second, allowing the case to proceed on the district
 court's order will subject L.S. to an extended period of
 uncertainty as the court and the parties attempt to devise
 and implement a treatment plan for Mother. And given the
 history of abuse presented at the dispositional hearing, as
 well as the current SBI evidence, L.S. may suffer irreparable
 harm if we decline to intervene. Finally, this court
 hasn't previously discussed the evidentiary burden
 required at a dispositional hearing when the state asserts
 that an appropriate treatment plan can't be devised for a
 parent due to the parent's unfitness. See In re
 Marriage of Wollert, 2020 CO 47, ¶ 19, 464 P.3d
 703, 709

(explaining that we may exercise original jurisdiction where
 "we deem this a rare opportunity to construe" a
 statute).

 ¶12
 Therefore, we exercise our original jurisdiction and proceed
 to the merits of the petition.

 B.
Standard of Review

 ¶13
We review de novo a district court's ruling on a motion
 for directed verdict. Reigel v. SavaSeniorCare
 L.L.C., 292 P.3d 977, 982 (Colo.App. 2011). Even so,
 directed verdicts are disfavored; we "must consider all
 the facts in the light most favorable to the nonmoving party
 and determine whether a reasonable jury could have found in
 favor of the nonmoving party." Scholle v.
 Ehrichs, 2022 COA 87M, ¶ 21, 519 P.3d 1093, 1101
(quoting State Farm Mut. Auto. Ins. Co. v. Goddard,
 2021 COA 15, ¶ 26, 484 P.3d 765, 771).

 ¶14
 Resolution of the motion for directed verdict required the
 district court to interpret several statutes, a legal
 question that we also review de novo. See Reigel,
 292 P.3d at 982 (explaining that because statutory
 interpretation presents a question of law, "we 'may
 make an independent determination of [the] legal
 question'" (alteration in original) (quoting
Omedelena v. Denver Options, Inc., 60 P.3d 717, 722
(Colo.App. 2002))).

 ¶15
 Our primary goal in interpreting statutes is to ascertain and
 give effect to the legislature's intent. People in
 Int. of J.G., 2016 CO 39, ¶ 13, 370 P.3d 1151,
 1157.

To do so, we begin with the language of the statute, reading
 the words and phrases in context and according to their plain
 and ordinary meaning. Bostelman v. People, 162 P.3d
 686, 690 (Colo. 2007). We construe provisions of the
 Children's Code liberally, favoring interpretations that
 produce a harmonious and consistent reading of the scheme as
 a whole and avoiding technical readings that would disregard
 the child's best interests or the legislative intent.
L.M., ¶ 13, 416 P.3d at 879;
Bostelman, 162 P.3d at 690; see also §
 19-1-102(2), C.R.S. (2022) ("[T]he provisions of this
 title shall be liberally construed to serve the welfare of
 children and the best interests of society.").

 C.
Dependency and Neglect Proceedings Overview

 ¶16
 Dependency and neglect proceedings are governed by article
 three of the Children's Code. §§ 19-3-100.5 to
 -905, C.R.S. (2022). These proceedings are "aimed at
 protecting children from emotional and physical harm while at
 the same time seeking to repair and maintain family
 ties." L.L. v. People, 10 P.3d 1271, 1275
(Colo. 2000). In striving to balance these objectives, the
 legislature separated the proceedings into phases. People
 in Int. of D.R.W., 91 P.3d 453, 456 (Colo.App. 2004).

 ¶17
 The first phase is adjudication. § 19-3-505(7)(a),
 C.R.S. (2022). "The purpose of adjudication is to
 determine whether State intervention is necessary to serve
 the best interests of the children, but to do so in a manner
 that protects parental

 rights." J.G., ¶ 24, 370 P.3d at 1159.
Until the court has entered an adjudication order, "the
 state has limited authority to take action to protect a
 child." L.L., 10 P.3d at 1276. If the state
 proves the allegations in the petition by a preponderance of
 the evidence, the court "shall make an order of
 adjudication setting forth whether the child is neglected or
 dependent." § 19-3-505(7)(a).

 ¶18
 Once the court enters an adjudication order, it must hold a
 dispositional hearing to determine "the proper
 disposition [to] best serv[e] the interests of the child and
 the public." § 19-3-507(1)(a), C.R.S. (2022);
see also § 19-1-103(58), C.R.S. (2022); §
 19-3-505(7). The dispositional hearing should be held the
 same day as the adjudicatory hearing whenever possible.
§ 19-3-508(1), C.R.S. (2022).

 ¶19
 During this dispositional phase, the court determines where
 to place the child and whether a treatment plan can be
 devised for the parents. Id. The goal is to protect
 the child while striving to reunify the family. See
 generally § 19-3-508; L.M., ¶ 24, 416
 P.3d at 880-81; K.D. v. People, 139 P.3d 695, 699
(Colo. 2006). At the conclusion of this initial dispositional
 hearing, the court will enter a "dispositional
 decree" that includes both child-placement and
 parental-treatment-plan orders; however, that decree may be
 reviewed and modified at any point while the case remains
 open. § 19-3-508(7); § 19-3-702, C.R.S. (2022);
L.L., 10 P.3d at 1277.

 ¶20
The legislature has also recognized that sometimes an
 appropriate treatment plan can't be devised. §
 19-3-508(1)(e)(I); K.D., 139 P.3d at 700; People
 in Int. of Z.P.S., 2016 COA 20, ¶ 16, 369 P.3d 814,
 817.

For example, and as relevant here, section 19-3-508(1)(e)(I)
 permits a court to find that an appropriate treatment plan
 can't be devised "due to the unfitness of the
 parents as set forth in section 19-3-604(1)(b)[, C.R.S.
 (2022)]." Section 19-3-604(1)(b) lists "[a] single
 incident resulting in serious bodily injury or disfigurement
 of the child" as one of the bases for parental
 unfitness. § 19-3-604(1)(b)(II). Under such
 circumstances, a court's dispositional decree may include
 a finding that an appropriate treatment plan can't be
 devised, thereby "avoiding the futility of proceeding
 with a treatment plan doomed to failure."
D.R.W., 91 P.3d at 457.

 ¶21
 After this initial dispositional hearing, and regardless of
 whether parents are proceeding under a treatment plan or not,
 the court "shall conduct a permanency planning
 hearing," in order "to provide stable, permanent
 homes for every child or youth placed out of the home, in as
 short a time as possible." § 19-3-702(1)(a);
see also § 19-3-508(1)(e)(I).

 ¶22
 Although not immediately at issue here, it is helpful to
 understand that dependency and neglect proceedings can
 culminate in termination. If it becomes apparent that
 "maintaining the family unit is not feasible, . . . the
 court may order termination of the parent-child
 relationship." L.L., 10 P.3d at 1275;
see § 19-3-602(1), C.R.S. (2022); §
 19-3-604. Termination proceedings are governed by separate
 rules with heightened burdens. See §§
 19-3-601 to -612, C.R.S. (2022)

(“termination statutes”); see also
§ 19-3-508(1), (3) (excluding termination from those
 provisions).

 ¶23
 With this framework in mind, we turn to the issues presented
 here.

 D.
Application

 ¶24
 At the dispositional hearing following the court's
 adjudication order, the state introduced undisputed evidence
 that L.S. had suffered an SBI. The state argued that, based
 on sections 19-3-508 and 19-3-604, the incident of SBI
 rendered Mother unfit and an appropriate treatment plan
 couldn't be devised. Mother moved for directed verdict,
 asserting that the state had failed to show by clear and
 convincing evidence that a treatment plan couldn't be
 devised to address her unfitness, as required under
 section 19-3-604.

 ¶25
The district court agreed with Mother. It found that an SBI
 alone is insufficient to forgo devising a treatment plan and
 that the state must show by clear and convincing evidence
 that no treatment plan could address Mother's unfitness.
In doing so, the district court raised the burden of proof
 and added an element not required by the statutes' plain
 language.

 ¶26
The district court relied primarily on People in Interest
 of T.W., 797 P.2d 821 (Colo.App. 1990). Although that
 decision preceded the current Children's Code and
 includes some language that the statutes no longer contain,
 it also recognized that a treatment plan is not required in
 every case. Id. at 822 ("If a
 treatment plan

 is to be part of this disposition, it must be one
 'reasonably calculated to render the particular
 respondent fit to provide adequate parenting to the child
 within a reasonable time and which is relative to the
 child's needs.'" (emphasis added) (quoting
§ 19-3-111(1)(e)(II), 8B C.R.S. (1986))). The
 T.W. court concluded that, "[t]o require a
 trial court to ignore [the state's evidence of] a
 parent's irremediable conduct at a dispositional hearing
 and devise a treatment plan that is doomed to failure would
 both contravene the purposes of the Children's Code and
 elevate form over substance." Id. Thus, a trial
 court could conclude that an appropriate treatment plan
 can't be devised according to the bases in subsection
 604(1)(b). Id. The same rule applies today.

 ¶27
 Because a decision regarding a parent's treatment plan
 occurs as part of the dispositional proceedings, the
 governing statute is section 19-3-508. The relevant provision
 provides that "the court may find that an appropriate
 treatment plan cannot be devised . . . due to the unfitness
 of the parents as set forth in section
 19-3-604(1)(b)." § 19-3-508(1)(e)(I) (emphasis
 added).

 ¶28
 By its own terms, section 19-3-604 applies only to
 termination proceedings: "The court may order a
 termination of the parent-child legal relationship upon the
 finding by clear and convincing evidence . . . [t]hat the
 child is adjudicated dependent or neglected and the court
 finds that an appropriate treatment plan cannot be devised to
 address the unfitness of the parent or parents." §
 19-3-604(1)(b).

The next sentence of that provision, however, provides the
 bases necessary to support a finding of unfitness: "In
 making such a determination, the court shall find one of the
 following [seven bases] as the basis for unfitness."
Id. This is the portion referenced in subsection 508
 that "set[s] forth" the bases for unfitness and
 includes as one of those bases "[a] single incident
 resulting in serious bodily injury or disfigurement of the
 child." § 19-3-604(1)(b)(II).

 ¶29
 Reading the plain language of subsections 508(1)(e)(I) and
 604(1)(b)(II) together, we conclude that the legislature
 intended to allow trial courts to find that a parent is unfit
 and no appropriate treatment plan can be devised if the state
 shows that the child has suffered a "single incident
 resulting in [SBI]."[2]

§ 19-3-604(1)(b)(II). The state need not also
 show that the parent caused the SBI or that no treatment plan
 can be devised to address the parent's conduct that
 caused the SBI. See J.G., ¶¶ 23-31,
 370 P.3d at 1159-61 (concluding that the court of
 appeals' statutory interpretation erroneously added an
 element that the statute didn't require and thereby
 ignored the plain language of the statue). SBI alone
 suffices.[3]

 ¶30
 Furthermore, contrary to Mother's assertions, our
 interpretation does not violate her right to procedural due
 process. This court has repeatedly held that procedural due
 process is satisfied if a parent is provided with
 "notice of the

 allegations in the termination motion, the opportunity to be
 heard, the opportunity to have counsel if indigent, and the
 opportunity to call witnesses and engage in cross
 examination." People in Int. of E.B., 2022 CO
 55, ¶ 16, 521 P.3d 637, 640 (quoting People in Int.
 of A.M. v. T.M., 2021 CO 14, ¶ 18, 480 P.3d 682,
 687). And in assessing fairness, "the trial court [must]
 give primary consideration to the child's physical,
 mental, and emotional needs." A.M., ¶ 20,
 480 P.3d at 687.

 ¶31
 Here, although Mother's "private interest in the
 continuation of the parent- child relationship is
 commanding," see A.M. v. A.C., 2013 CO 16,
 ¶ 34, 296 P.3d 1026, 1036, she has been provided, and
 will continue to receive, notice and an opportunity to be
 heard. And while there is not a constitutional right to
 counsel for respondent parents in all cases, see Lassiter
 v. Dep't of Soc. Servs., 452 U.S. 18, 25-32 (1981),
 Mother has a statutory right to counsel "at every stage
 of the proceedings," § 19-3-202(1), C.R.S. (2022),
 which she has invoked. On the other hand, if we adopt her
 interpretation of the statutes and reinstate the district
 court's order for directed verdict, there would be no
 further presentation of evidence or fact-finding procedures
 at this phase, which could undermine the government's
 substantial interest in protecting the long-term welfare of
 L.S. See A.C., ¶ 37, 296 P.3d at 1037. Thus, we
 perceive no procedural due process violation.

 ¶32
 In light of the uncontested evidence that L.S. had sustained
 an SBI, we conclude that the district court erred in granting
 Mother's motion for directed

 verdict. Still, the court has options on remand. It may
 conclude, based on the SBI evidence alone, that an
 appropriate treatment plan can't be devised, or it may
 hear further argument and accept additional evidence before
 deciding whether a treatment plan is possible. Nothing in the
 statute requires the court to find that an
 appropriate treatment plan can't be devised. See
§ 19-3-508(1)(e)(I) (explaining that "the court
may find that an appropriate treatment plan cannot
 be devised," but not requiring such a finding (emphasis
 added)).

 ¶33
 Although the SBI evidence is uncontested here, we nonetheless
 address the burden of proof required to support a
 no-treatment-plan finding. The district court, relying on
 outdated language in T.W. that the legislature
 didn't include in the current Children's Code,
 concluded that the state's burden is clear and convincing
 evidence. See T.W., 797 P.2d at 822 ("[C]lear
 and convincing evidence of irremediable conduct is no less
 relevant a consideration at a dispositional hearing following
 a dependency and neglect adjudication than it would be at a
 termination hearing."). But the requisite burden of
 proof "turns in large part on both the nature of the
 threatened private interest and the permanency of the
 threatened loss," L.L., 10 P.3d at 1276, and
 neither the statute nor our case law supports such a high
 burden of proof for any stage of proceedings other than
 termination.

 ¶34
The legislature expressly provided a clear and convincing
 evidence burden only in the termination statutes.
Compare § 19-3-604(1) (requiring that a
 termination order be entered only "upon the finding by
 clear and convincing evidence" of one of the enumerated
 criteria), with § 19-3-505(1), (6), (7)(a)
(requiring that a court's order of adjudication be
 entered where the allegations in the petition are supported
 by a preponderance of the evidence), and §
 19-3-508(2) (requiring proof by a preponderance of the
 evidence that removing a child from the legal custody of a
 parent is in the child's best interests). And courts in
 this state have consistently upheld a lesser
 burden-preponderance of the evidence-in all adjudication and
 disposition proceedings other than termination. See
 J.G., ¶ 30, 370 P.3d at 1160 ("[T]he burden of
 proof is higher and the State must prove additional criteria
 when terminating parental rights as opposed to determining
 whether a child is dependent or neglected.");
L.L., 10 P.3d at 1276 ("[W]hile a standard of
 clear and convincing evidence is constitutionally mandated in
 a proceeding for terminating the parent-child relationship, a
 standard of a preponderance of the evidence is sufficient for
 dependency and neglect proceedings."); People in
 Int. of A. M. D., 648 P.2d 625, 640 (Colo. 1982)
("[T]he application of the preponderance of the evidence
 standard for all purposes in the underlying dependency or
 neglect determination comports with due process of
 law."); Z.P.S., ¶ 10, 369 P.3d at 816-17
(providing that the "preponderance of the

 evidence standard applies to both the adjudicatory and
 dispositional stages of a dependency and neglect
 proceeding" (quoting People in Int. of L.B.,
254 P.3d 1203, 1208 (Colo.App. 2011))).

 ¶35
 These different burdens exist because termination is the only
 disposition that permanently deprives parents of their
 fundamental liberty interests in caring for their children.
See L.L., 10 P.3d at 1275-77. All other dispositions
 and orders- including a no-treatment-plan order-may
 subsequently be modified if there is a substantial change in
 circumstances. Id. at 1277. And so even where a
 decision may eventually lead to the termination of parental
 rights, the initial dispositional hearing decision need be
 supported only by a preponderance of the evidence. See A.
 M. D., 648 P.2d at 641 n.14.

 ¶36
 Should the state ultimately seek termination, it must file a
 motion "alleging the factual grounds for
 termination," and the court must hold a hearing. §
 19-3-602(1). In defending against such a motion, Mother is
 entitled to cross-examine the state's witnesses and put
 on witnesses of her own, including an expert, paid for by the
 state. § 19-3-607(1), C.R.S. (2022). After considering
 the state's and Mother's evidence, the court
may terminate parental rights if it finds that all
 statutory requirements have been established by clear and
 convincing evidence. See § 19-3-604.

 ¶37
 Therefore, we conclude the district court erred by imposing a
 clear and convincing burden of proof on the state at the
 dispositional hearing.

 III.
Conclusion

 ¶38
 Because there is no dispute that L.S. sustained an SBI, we
 reverse the district court's order granting Mother's
 motion for directed verdict, make the rule absolute, and
 remand the case to the district court for further
 proceedings.

---------

[1] The state's petition presented the
 following issues:

1. Whether the juvenile court erred by requiring
 additional evidence that no treatment plan can be devised to
 address a parent's unfitness beyond what is specifically
 enumerated in sections 19-1-508(1)(e) and 19-3-604(1)(b)(II),
 C.R.S. (2022).

2. Whether the juvenile court erred in requiring clear
 and convincing evidence to establish that no treatment plan
 can be devised at a dispositional proceeding in a dependency
 and neglect action instead of preponderance of the
 evidence.

[2] We are not persuaded by Mother's
 argument that this interpretation of state statutes runs
 afoul of the Adoption and Safe Families Act
 ("ASFA"), 42 U.S.C. §§ 670-679c. First,
 ASFA is a funding bill that provides criteria by which a
 state must comply to receive federal funding; it does not
 create a private, enforceable right for parents or children.
Suter v. Artist M., 503 U.S. 347, 358-64 (1992);
see 42 U.S.C. § 1320a-2 ("[T]his section
 is not intended to alter the holding in Suter v. Artist
 M. that section 671(a)(15) of this title is not
 enforceable in a private right of action."). Second,
 states are given broad discretion to determine how best to
 comply with the Act's provisions. Suter, 503
 U.S. at 360-63. ASFA requires state plans to make reasonable
 efforts to preserve and reunify the family before removing
 the child from the home, if possible, and to make it possible
 for the child to safely return, but all reasonable efforts
 shall place the child's health and safety as the
 paramount concern. 42 U.S.C. § 671(a)(15)(A)-(B). Such
 reasonable efforts aren't required if the parent has
 subjected the child to aggravated circumstances, as defined
 by state law. 42 U.S.C. § 671(a)(15)(D)(i). Although our
 legislature didn't use the same language as
 ASFA-"aggravated circumstances"-it defined
 specific, limited situations where a court may determine that
 reasonable efforts to preserve the family would be futile.
See § 19-3-604(1)(b). This provision complies
 with ASFA's requirements. See § 19-3-100.5,
 C.R.S. (2022); § 19-1-103(114), C.R.S. (2022) (defining
 "reasonable efforts" by explaining that the
 child's "health and safety are the paramount
 concern" and should not be "construed to conflict
 with federal law"); see also Suter, 503 U.S. at
 361-63 ("[Federal] regulations provide that to meet the
 requirements of § 671(a)(15) the case plan for each
 child must 'include a description of the services offered
 and the services provided to prevent removal of the child
 from the home and to reunify the family.' 45 CFR §
 1356.21(d)(4) (1991). . . . [And] [t]he term 'reasonable
 efforts' in this context is at least as plausibly read to
 impose only a rather generalized duty on the State . . .
 .").

[3] The statute contains no language
 regarding causation, and we cannot add words to the statute
 that aren't there. Montez v. People, 2012 CO 6,
 ¶ 19, 269 P.3d 1228, 1232. To the extent that
 Mother's argument "may highlight shortcomings in the
 statute," it is for the legislature, not the courts, to
 rewrite it. People v. Butler, 2017 COA 117, ¶
 35, 431 P.3d 643, 650; see Owens v. Carlson, 2022 CO
 33, ¶ 30, 511 P.3d 637, 643 ("That we may rue
 inartful legislative drafting, however, does not excuse us
 from the responsibility of construing a statute as faithfully
 as possible to its actual text." (quoting DePierre
 v. United States, 564 U.S. 70, 82 (2011))).

---------