The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
July 21, 2022

**2022COA80**

**No. 21CA1006, *In re the Marriage of Thorburn* — Family Law — Post-Dissolution — Modification of Parenting Time — Motion to Restrict Parenting Time or Parental Contact — Imminent Physical or Emotional Danger**

In this post-dissolution of marriage proceeding, a division of the court of appeals addresses, as a matter of first impression, whether a motion under section 14-10-129(4), C.R.S. 2021, requires the moving parent to prove, at the emergency hearing, that the child is in imminent danger. Interpreting the plain language of section 14-10-129(4) — and applying it in harmony with section 14-10-129(1)(b)(I) — the division concludes that (1) under section 14-10-129(4), a moving parent need not prove, at the emergency hearing, that the child is in imminent danger; and (2) the district court must apply the endangerment standard under section 14-10-129(1)(b)(I) to continue any parenting time restriction. The record

substantiates that, in assessing mother's motion to restrict parenting time, the correct legal standard was applied, so the division affirms.

COLORADO COURT OF APPEALS                                    **2022COA80**

Court of Appeals No. 21CA1006
Jefferson County District Court No. 19DR30372
Honorable Diego G. Hunt, Judge

In re the Marriage of

Danielle Jeanette Thorburn,

Appellee,

and

James M. Thorburn,

Appellant.

ORDER AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE FOX
Gomez, J., concurs
Taubman*, J., dissents

Announced July 21, 2022

Miller Family Law, LLC, Kate Miller, Jessica Hoyt, Sophie Altman, Denver,
Colorado, for Appellee

Thorburn Law Group, LLC, James D. Thorburn, Carolyn M. Schaffer,
Greenwood Village, Colorado, for Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2021.

¶ 1      This appeal involves the interplay between subsections (1)(b)(I) and (4) of section 14-10-129, C.R.S. 2021. Both subsections enable a district court to restrict parenting time so that a child is safe from physical and emotional endangerment. Subsection (1)(b)(I) applies to any order that imposes or continues a parenting time restriction. Subsection (4) allows a district court, on an emergency basis, to restrict parenting time until a hearing can be held within fourteen days. But where they differ is that subsection (1)(b)(I) does not mention imminence while subsection (4) does. The import of that difference is at the center of this appeal.

¶ 2      James M. Thorburn (father) challenges a magistrate's decision restricting his parenting time. According to him, the magistrate incorrectly defined "imminent" under subsection (4) and, as a result, failed to apply the appropriate legal standard.

¶ 3      Danielle Jeanette Thorburn (mother) counters that, even if the magistrate wrongly defined "imminent," it does not matter. She argues that a motion to restrict parenting time under subsection (4) is simply a procedural vehicle to get an emergency hearing and an immediate parenting time restriction, nothing more. And at the emergency hearing, she asserts, the general standards under

subsection (1)(b)(I) — applicable to all hearings to restrict parenting time — govern.

¶ 4     For the reasons discussed below, we agree with mother. We affirm the district court's order adopting the magistrate's decision restricting father's parenting time. But we remand the case to the district court for further proceedings on mother's request for appellate attorney fees under section 14-10-119, C.R.S. 2021.

## I.     Relevant Facts and Procedural History

¶ 5     The parties' marriage ended in February 2020. The dissolution decree incorporated their parenting plan for their son, J.C.T. Under the plan, J.C.T. would live primarily with mother. The parties also agreed that father would follow a step-up parenting time schedule, beginning with an overnight every week with the goal of equal time in nine months.

¶ 6     On February 1, 2021, mother moved to restrict father's parenting time under section 14-10-129(1)(b)(I) and (4). She alleged, among other things, that during father's most recent parenting time, J.C.T., then thirty-two months old, suffered a deep gash on his forehead, requiring eight stitches. Father quickly responded and asserted that J.C.T.'s injury was accidental.

¶ 7 The next day, a magistrate deemed mother's allegations sufficiently pleaded, scheduled an emergency hearing for February 9, and ordered that father's parenting time be supervised until then.

¶ 8 Following the emergency hearing, at which only the parties testified, the magistrate issued an oral ruling and directed mother's attorney to draft a proposed order.

¶ 9 For reasons unexplained in the record, both parties submitted proposed orders, and the magistrate signed father's order on February 26, 2021.[1]

¶ 10 In the written order, the magistrate made the following findings:

---

[1] We appreciate that the magistrate gave both parties the opportunity to have input into the content of the proposed order. But after careful scrutiny, we determine that the written order (as proposed by father) is, at times, at odds with the oral ruling. For instance, the written order ignores the fact that the magistrate applied section 14-10-129(1)(b), C.R.S. 2021, in addition to section 14-10-129(4). Even so, we view the oral ruling as supplementing the written order. *See Friends of Denver Parks, Inc. v. City & Cnty. of Denver*, 2013 COA 177, ¶¶ 34-37 (district court's oral findings supplement its written order); *see also In re Marriage of Cespedes*, 895 P.2d 1172, 1176 (Colo. App. 1995) (considering district court's oral ruling in rejecting contention that its findings and conclusions were inadequate to support its order).

- Between August 2019 and January 2021, J.C.T. sustained five injuries while in father's care.

- Three of the five injuries were "serious concussions," and another involved a significant "split lip."

- Father's explanations of J.C.T.'s injuries were not credible.

- J.C.T.'s injuries were "unusual" and would not have happened had father properly supervised him.

- There was an active investigation by the Jefferson County Division of Children, Youth and Families regarding mother's allegations.

From those findings, the magistrate (1) rejected father's definition of "imminent" for purposes of section 14-10-129(4); (2) read "imminent" to mean a "certainty" at some point in the future, without "any form of immediacy"; (3) applied that definition and section 14-10-129(1)(b)(I) and (4); and (4) determined that mother had proved that J.C.T. was in imminent danger. In the end, the magistrate continued father's supervised parenting time and imposed certain conditions that father must meet before requesting a modification.

¶ 11 On March 3, 2021, mother filed a motion to "set aside," asking the magistrate to reconsider the selection of father's proposed order. Nine days later, father petitioned for district court review.

¶ 12 Regarding father's petition for review, the district court adopted the magistrate's decision. The court denied mother's motion to set aside to the extent that it sought review of the magistrate's decision. The court, however, remanded the case to the magistrate with directions to resolve mother's motion as it related to the form of the magistrate's written order.

¶ 13 Father then filed his notice of appeal. Based on a lack of jurisdiction given the pending appeal, the magistrate on remand declined to entertain mother's motion to set aside.

## II. Motion to Restrict Parenting Time Under Section 14-10-129(4)

### A. Jurisdiction

#### 1. Subject Matter Jurisdiction

¶ 14 At oral argument and later in his written supplemental authority, father asserted that the district court order should be vacated for lack of subject matter jurisdiction. He insisted that the parties never consented to the magistrate's jurisdiction. Father is mistaken.

¶ 15    A district court has subject matter jurisdiction when it has been "empowered to entertain the type of case before it by the sovereign from which the court derives its authority." *In re Marriage of Roth*, 2017 COA 45, ¶ 14 (quoting *Wood v. People*, 255 P.3d 1136, 1140 (Colo. 2011)).  The Colorado Constitution vests a district court with general subject matter jurisdiction in civil cases, which may be limited by the legislature only when that limitation is explicit.  *See* Colo. Const. art. VI, § 9; *see also Currier v. Sutherland*, 215 P.3d 1155, 1159 (Colo. App. 2008), *aff'd*, 218 P.3d 709 (Colo. 2009).  "[D]omestic relations cases are 'proceedings of a civil nature.'" *In re Marriage of Wollert*, 2020 CO 47, ¶ 26 (quoting *In re Marriage of Durie*, 2020 CO 7, ¶ 14).

¶ 16    Because this dissolution proceeding is civil in nature, the district court (and the magistrate before it) had constitutionally vested subject matter jurisdiction to hear the action, including mother's motion to restrict.  *See* Colo. Const. art. VI, § 9; *see also Wollert*, ¶ 26; *Roth*, ¶ 14.

¶ 17    To the extent father argues that the magistrate lacked authority to act on mother's motion to restrict, he is again mistaken.  C.R.M. 6(b)(1)(B) gives a magistrate the power to preside

6

over all motions to modify parental responsibilities without the parties' consent. *See Evans v. Evans*, 2019 COA 179M, ¶ 20; *see also In re Marriage of Roosa*, 89 P.3d 524, 527 (Colo. App. 2004); § 13-5-201(3), C.R.S. 2021. So, regardless of the parties' consent, the magistrate had the authority to preside over mother's motion to restrict, which sought to modify the existing parenting time order.

## 2.     Finality

¶ 18     Mother contends that the district court's order is not final and appealable because her motion to set aside the magistrate's approval of father's proposed order remains pending before the magistrate on remand. We disagree.

¶ 19     With limited exceptions not applicable here, our appellate jurisdiction is limited to review of final judgments or orders. *In re Marriage of Evans*, 2021 COA 141, ¶ 11; *see also* C.A.R. 1(a)(1); § 13-4-102(1), C.R.S. 2021.

¶ 20     A magistrate's decision that fully resolves an issue or claim is final. C.R.M. 7(a)(3); *In re Marriage of January*, 2019 COA 87, ¶ 12.

¶ 21     A party may obtain review of a magistrate's final decision in a proceeding, like this one, where consent was not necessary, by filing a timely petition for review with the district court under C.R.M.

7(a)(5). Once a district court enters its order on review, a party may appeal to this court. C.R.M. 7(a)(11); *Heotis v. Colo. Dep't of Educ.*, 2016 COA 6, ¶ 15.

¶ 22     Here, father invoked district court review of the magistrate's decision to continue his supervised parenting time. After adopting the decision, the court remanded the case to the magistrate to resolve any dispute as to the form of the written order.

¶ 23     The district court could not, under C.R.M. 7, remand the issue to the magistrate and the magistrate would have lacked authority to act. At oral argument, mother described her motion as one for reconsideration, which falls under either C.R.C.P. 59 or C.R.C.P. 60(b). A magistrate cannot rule on a motion to reconsider under C.R.C.P. 59 or for relief under C.R.C.P. 60(b). *In re Parental Responsibilities Concerning M.B.-M.*, 252 P.3d 506, 510 (Colo. App. 2011); *see also* C.R.M. 5(a) (magistrate may correct clerical errors under C.R.C.P. 60(a) but otherwise has no authority to rule on a motion for rehearing). Because there was no relief the magistrate could then grant, mother's motion for reconsideration was effectively denied.

¶ 24    Therefore, the district court's order and the underlying magistrate's decision are final and appealable, and we have jurisdiction to consider them.

## B.    Standard of Review

¶ 25    Our review of a district court's order adopting a magistrate's decision is effectively a second layer of appellate review. *In re Marriage of Sheehan*, 2022 COA 29, ¶ 22. We must accept the magistrate's factual findings unless they are clearly erroneous, meaning that they have no support in the record. *In re Marriage of Young*, 2021 COA 96, ¶ 8.

¶ 26    However, we review de novo questions of law, including whether the magistrate properly interpreted a statute or applied the correct legal standard. *See Sheehan*, ¶ 22; *see also Wollert*, ¶ 20.

## C.    Relevant Law

¶ 27    Section 14-10-129(1)(b)(I), commonly referred to as the endangerment standard, applies to all motions to restrict parenting time:

> The court shall not restrict a parent's
> parenting time rights unless it finds that the
> parenting time would endanger the child's
> physical health or significantly impair the
> child's emotional development. In addition to

9

a finding that parenting time would endanger the child's physical health or significantly impair the child's emotional development, *in any order imposing or continuing a parenting time restriction,* the court shall enumerate the specific factual findings supporting the restriction.

(Emphasis added.)

¶ 28    Section 14-10-129(4) allows a parent to obtain a parenting time restriction on an emergency basis:

> A motion to restrict parenting time or parental contact with a parent which alleges that the child is in imminent physical or emotional danger due to the parenting time or contact by the parent shall be heard and ruled upon by the court not later than fourteen days after the day of the filing of the motion. Any parenting time which occurs during such fourteen-day period after the filing of such a motion shall be supervised by an unrelated third party deemed suitable by the court or by a licensed mental health professional . . . .

¶ 29    A supervised parenting time requirement is a restriction on parenting time. *See In re Marriage of Parr*, 240 P.3d 509, 512 (Colo. App. 2010).

## D.    Discussion

¶ 30    For purposes of subsection (4), father defined "imminent" as "near at hand or impending." The magistrate rejected his definition:

> "Imminent" in this context *does not connote any form of immediacy.* Rather, it is the certainty of the harm happening whether it is days, weeks, or months in the future. [I]t is not a question of "if" but "when" in this case. It does not matter if the "when" is an unspecific sometime in the future.

(Emphasis added.)

¶ 31 Father maintains that because the magistrate used an inaccurate definition of "imminent," the magistrate applied an improper legal standard when deciding mother's motion to restrict under subsection (4).[2]

¶ 32 Mother asserts that the "imminent" standard applies only to the district court's initial determination as to whether a motion to restrict parenting time under subsection (4) meets the particularity requirement under C.R.C.P. 7(b)(1). *See Wollert*, ¶ 27 (particularity

---

[2] Mother asserts that by merely citing the magistrate's decision, father has not preserved this issue. But the magistrate expressly denied father's argument concerning the correct legal standard to be applied, and father reasserted the same argument in his petition for district court review. Because the issue was raised before the magistrate and the district court, it is preserved. *See In re Marriage of Dean*, 2017 COA 51, ¶ 18 (issue was preserved when the mother raised the issue in her petition for district court review). For the same reasons, we disagree with the dissent's expansive discussion of the perceived procedural issues. Whether mother was required to prove imminent harm was and continues to be central to the parents' dispute.

requirement of C.R.C.P. 7(b)(1) applies to all motions to restrict parenting time under section 14-10-129(4), and a hearing is mandatory within fourteen days if the particularity requirement is met). In other words, imminence need not be proved at the emergency hearing, nor is the court required to make a specific finding of imminence for the court to continue a parenting time restriction. Rather, it is only relevant as a threshold determination that entitles the moving party to a hearing. Thus, mother argues, even if "imminent" was wrongly defined, the magistrate properly applied the endangerment standard under subsection (1)(b)(I) when continuing father's supervised parenting time.

¶ 33    We agree with mother.[3]

¶ 34    When interpreting a statute, we must find and give effect to the legislative intent. *Wollert*, ¶ 20. Our starting point is the language of the statute itself, giving words and phrases their plain and ordinary meanings. *In re Marriage of Zander*, 2019 COA 149, ¶ 12, *aff'd*, 2021 CO 12; *see also* § 2-4-101, C.R.S. 2021 ("Words and phrases shall be read in context and construed according to

---

[3] Given our disposition, we do not opine on the propriety of the magistrate's definition of "imminent."

12

the rules of grammar and common usage."). If the language is clear, we apply the statute as written without resorting to other tools of statutory construction. *Wollert*, ¶ 20.

¶ 35    In interpreting provisions of the Uniform Dissolution of Marriage Act (UDMA), sections 14-10-101 to -133, C.R.S. 2021, we do not read the provisions in isolation. *In re Marriage of Schlundt*, 2021 COA 58, ¶ 27. Rather, we must read the relevant provisions of the UDMA together, harmonizing them if possible. *See id.*; *see also In re Marriage of Mack*, 2022 CO 17, ¶ 13 ("[W]e examine 'the entire statutory scheme to give consistent, harmonious, and sensible effect to all parts . . . .'" (quoting *Vallagio at Inverness Residential Condo. Ass'n v. Metro. Homes, Inc.*, 2017 CO 69, ¶ 16)).

¶ 36    The parties do not argue that either subsection (1)(b)(I) or (4) is ambiguous or that the two conflict. We, too, see neither ambiguity nor conflict.

¶ 37    Looking at the statutory scheme as a whole, we conclude that subsections (1)(b)(I) and (4) work together to address motions to restrict parenting time. *See Schlundt*, ¶ 27; *see also Mack*, ¶ 13.

¶ 38    We read the plain language of subsection (1)(b)(I) as applying to all motions to restrict parenting time, including emergency

13

motions.  Under subsection (1)(b)(I), the district court first must find endangerment and then must make specific findings supporting its decision to impose or continue a parenting time restriction.

¶ 39     Subsection (4), on the other hand, concerns extraordinary situations of an "emergency nature" that pose an imminent risk to the child's safety.  *Wollert*, ¶¶ 19, 31 ("Section 14-10-129(4) attempts to accommodate the rights of each parent vis-à-vis parenting time while prioritizing the rights of children to be safe and protected from imminent physical or emotional danger.").  To that end, the legislature, in drafting subsection (4), included the word "imminent."  *See In re Marriage of Bertsch*, 97 P.3d 219, 221 (Colo. App. 2004) (stating that the legislature is presumed to have acted intentionally when it includes language in one section of a statute, but omits it from another (citing *United States v. Burch*, 202 F.3d 1274, 1277 (10th Cir. 2000))).

¶ 40     Subsection (4) plainly states that the moving parent must allege — not prove — that the child is in imminent physical or emotional danger due to the parenting time or contact by a parent. Then, the district court determines whether the moving parent has sufficiently pleaded allegations -- including whether the danger is

threatening to occur at any moment -- requiring the court to take urgent action by setting an emergency hearing within fourteen days. *See Wollert*, ¶ 54 (For purposes of section 14-10-129(4), "[i]mminence requires that the alleged harm is threatening to occur at any moment and requires urgent action."). Upon filing a sufficient section 14-10-129(4) motion, any parenting time occurring in that fourteen-day period must be supervised. And, once a hearing is held on said motion, the court applies subsection (1)(b)(I)'s general endangerment standard.

¶ 41    We conclude that the plain language of subsection (4) does not require the movant to prove, at the emergency hearing, that the child is in imminent danger. Instead, the statute only requires that a motion allege that the child is in imminent danger; it is a means of triggering a hearing within fourteen days and an immediate parenting time restriction pending that hearing.

¶ 42    Our interpretation effectuates the legislative intent and gives harmonious effect to both subsection (4) and subsection (1)(b)(I). Specifically, this reading of subsection (4) is supported by two practical reasons. First, at the time of the emergency hearing, the automatic, temporary parenting time restriction has already been in

place, thereby removing the child from the alleged imminent danger. An express finding of imminence at that point would be moot. Second, after the hearing, if the district court finds endangerment alone (without imminence), father's interpretation would force the district court to return the child to the same dangerous environment. That cannot be what the legislature intended. *See In re Marriage of Turilli*, 2021 COA 151, ¶ 38 (courts must avoid statutory interpretations that would lead to illogical or absurd results).

¶ 43    Father asserts that our interpretation would encourage "trials by ambush." He claims that if the emergency hearing becomes a "standard modification or restriction proceeding" under subsection (1)(b)(I), a responding parent would have to defend against the allegations without the benefit of full discovery under C.R.C.P. 16.2. We are not persuaded. Our reading of subsection (4) does not prevent a responding parent from obtaining discovery before the emergency hearing. Here — where only mother and father testified and both were aware of the circumstances alleged in mother's motion — father never raised a discovery issue, nor did he seek a continuance. And father cannot say that he was unfairly surprised

at the emergency hearing where mother's motion to restrict referenced subsection (1)(b)(I).

¶ 44     Nor are we persuaded by father's other assertion that our interpretation would create a "tool of gamesmanship."  If a motion to restrict parenting time lacks substantial justification, the district court must order the moving parent to pay the reasonable and necessary attorney fees and costs of the other parent.  *Wollert*, ¶ 29; *see* § 14-10-129(5); C.R.C.P. 11.

¶ 45     We now apply the above principles to the present case.

### E.     Application

¶ 46     After considering father's response to mother's motion to restrict, the magistrate deemed mother's allegations of imminent danger to be sufficiently pleaded.  As a result, the magistrate set an emergency hearing within fourteen days and imposed a supervised parenting time requirement pending the hearing.  That approach is consistent with section 14-10-129(4).

¶ 47     Following the emergency hearing, the magistrate applied the endangerment standard under section 14-10-129(1)(b)(I) and made the required factual findings to support the decision to continue father's supervised parenting time.

¶ 48    The evidence established that J.C.T. sustained several head injuries while in father's care from August 2019 to January 2021, about a week before mother filed her motion to restrict.  Mother testified that none of them were "kid-being-kid" injuries and that each one was worse than the last.  The most recent injury resulted in J.C.T. suffering a deep laceration on his forehead, down to the bone, requiring eight stitches.  Mother added that father wavered in his explanation as to how the injury happened.  He first said that J.C.T. hit the corner of a "bed drawer," then that he tripped over a dog, and finally that he hit a coffee table.

¶ 49    From that evidence, the magistrate found that father's pattern of poor supervision endangered J.C.T.  The magistrate also found that father failed to provide  reasonable and adequate explanations for J.C.T.'s injuries.  "[C]redibility determinations and the weight, probative force, and sufficiency of the evidence, as well as the inferences and conclusions to be drawn therefrom, are matters within the sole discretion of the [district] court." *In re Marriage of Lewis*, 66 P.3d 204, 207 (Colo. App. 2003).  The record supports the magistrate's endangerment finding.

¶ 50    Father argues that the magistrate "should not have considered [mother's] conclusory statements of concussion."  He did not raise this particular issue in his petition for district court review.  *See People in Interest of K.L-P.,* 148 P.3d 402, 403 (Colo. App. 2006) (party appealing a magistrate's decision must first raise particular issue in petition for review in district court).  But even if it was preserved, the magistrate found that mother's evidence was sufficient, and we see no reason to disturb that determination.  *See Lewis,* 66 P.3d at 207; *see also In re Marriage of Amich,* 192 P.3d 422, 424 (Colo. App. 2007) (district court can believe all, part, or none of a witness's testimony, even if uncontroverted).

¶ 51    Father also asserts that the magistrate erred by simply finding that J.C.T. was endangered while in his care, instead of making a specific finding that he actually committed or caused J.C.T.'s injuries.[4]  However, the magistrate found, and the record supports,

---

[4] Father also asserts that the magistrate erred because the legislature's inclusion of "due to the parenting time or contact by the parent" within section 14-10-129(4) required mother, at the emergency hearing, to prove that he actually caused imminent danger to J.C.T.  We disagree given our disposition that section 14-10-129(4) is merely a vehicle to obtain an emergency hearing within fourteen days and a temporary parenting time restriction pending

19

that father's actions or inactions during his parenting time endangered J.C.T. *See* § 14-10-129(1)(b)(I). Indeed, the magistrate said that the danger to J.C.T. was a result of father's failure to exercise a minimum degree of parental supervision.

¶ 52    Because the magistrate made the necessary findings under section 14-10-129(1)(b)(I), supported by the record, that father endangered J.C.T., we conclude that the magistrate properly continued father's parenting time restriction while allowing father to work on safer parenting skills. *See Young*, ¶ 8; *see also In re Marriage of Hatton*, 160 P.3d 326, 330 (Colo. App. 2007) (district court has broad discretion over parenting matters and an appellate court exercises every presumption in favor of the court's parenting time decisions).

¶ 53    In sum, the magistrate applied the correct legal standard in assessing mother's motion to restrict, and the record supports the magistrate's decision to continue father's supervised parenting time.

---

that hearing. In any event, the endangerment standard requires proof of causation. *See* § 14-10-129(1)(b)(I) ("The court shall not restrict a parent's parenting time rights unless it finds that the parenting time would endanger the child[] . . . .").

## III. New Evidence

¶ 54    Next, father argues that the district court on review erred "as a matter of law" by not reopening the proceeding under C.R.M. 7(a)(8) based on new evidence. He points to a child welfare referral assessment from the Jefferson County Division of Children, Youth and Families, which concluded that the referral related to father was unfounded. He relies solely on *Romero v. Colorado Department of Human Services*, 2018 COA 2, ¶ 60, for the proposition that the district court was required to "defer to an agency's decision involving factual and evidentiary matters within an agency's specialized or technical expertise." That reliance is misplaced.

¶ 55    *Romero* involved an appeal from a district court's review of a final agency action. *Id.* at ¶ 25. The division said that it must defer to an agency's decision involving factual and evidentiary matters within an agency's specialized or technical expertise. *Id.* at ¶ 60. However, the district court here was reviewing a magistrate's decision restricting parenting time, and, in that context, it was not required, as a matter of law, to necessarily defer to an independent child welfare referral assessment in conducting that review.

IV.   Appellate Attorney Fees

¶ 56    Asserting that the parties' financial resources are disparate, mother asks for an award of her appellate attorney fees under section 14-10-119.

¶ 57    In response, father argues that section 14-10-119 is inapplicable because mother's "action did not modify the original decree." He latches onto the following language in *In re Marriage of Burns*, 717 P.2d 991, 993 (Colo. App. 1985): "[B]ecause the original decree remained in force, there were no proceedings to which [section] 14-10-119 . . . would be applicable." Yet, when read in context, the division in *Burns* concluded that the wife could not recover any attorney fees under section 14-10-119 because her C.R.C.P. 60(b) motion was outside the UDMA and did not result in reopening the dissolution decree. Here, mother's motion to restrict was a proceeding under the UDMA, so section 14-10-119 applies. *See* § 14-10-119 (court "from time to time" can order fees for defending "any proceeding" brought under the UDMA).

¶ 58    That said, because the district court is better equipped to resolve the factual issues concerning the parties' current financial

22

circumstances, we remand the issue for its consideration. *See In re Marriage of Alvis*, 2019 COA 97, ¶ 30; C.A.R. 39.1.

## V. Conclusion

¶ 59 The order is affirmed. The case is remanded for the district court to consider mother's request for appellate attorney fees under section 14-10-119.

JUDGE GOMEZ concurs.

JUDGE TAUBMAN dissents.

JUDGE TAUBMAN, dissenting.

¶ 60     I agree with the majority that the principal issue in this case is the interplay between subsections (1) and (4) of section 14-10-129, C.R.S. 2021, concerning what a party must allege and prove at an emergency hearing under the latter subsection.  As the majority notes, subsection (1)(b)(I) applies to motions to restrict parenting time, whereas subsection (4) concerns motions to restrict parenting time that allege a child is in "imminent physical or emotional danger" due to the exercise of parenting time.  Subsection (4) requires that a motion filed under that subsection must be heard and ruled on by the court no later than fourteen days after the date such a motion is filed, but subsection (1)(b)(I) does not contain any temporal requirements.

¶ 61     I disagree with the majority that, when a motion is filed under subsection (4), a moving party must only allege, rather than prove, imminent harm to a child, and I further disagree that imminent harm was sufficiently alleged in this case.  In addition, I think this case raises significant procedural questions, including whether the majority's statutory analysis was raised before the magistrate and the district court.  Accordingly, for the reasons more fully discussed

below, I would reverse the district court's order and the magistrate's order.

## I. Background

¶ 62    Because the majority provides a detailed explanation of the relevant facts and procedural history, I will add to it only briefly. This is a contentious post-dissolution conflict between James M. Thorburn (father) and Danielle Jeanette Thorburn (mother) concerning their young son, born in 2018. The parties agreed that mother would be the child's primary residential parent and that father would follow a step-up parenting time schedule.

¶ 63    Just one year after their dissolution of marriage became final in February 2020, mother moved for an emergency hearing regarding parenting time under subsection (4) on February 1, 2021. She alleged that she was concerned about five incidents that had occurred during father's parenting time, including one the weekend before the motion was filed that resulted in a one-and-a-half-inch gash on her son's forehead and father taking their son to a hospital emergency room to be treated. Mother alleged that "father is neglecting the child at his home and the child is therefore getting injured while father is failing to watch him." She further asserted

25

that father was not appropriately supervising their son during his parenting time.

¶ 64 Although the motion cited subsections (1)(b)(I) and (4), it did not allege that the son was in imminent physical or emotional danger. Further, the motion did not explain how mother believed those subsections relate to one another.

¶ 65 Following an emergency hearing on February 9, 2021, a magistrate issued a signed minute order granting mother's requested relief, requiring father's parenting time to be supervised, and requiring him to complete parenting classes. The magistrate found that physical harm or injury to the son was imminent while in father's care due to lack of proper supervision, even though he found that father had not intentionally harmed the son. Although the magistrate cited subsections (1)(b)(I) and (4), he did not address how, if at all, those subsections relate to one another. The order also directed mother's attorney to draft a proposed order.

¶ 66 Seventeen days later, on February 26, the magistrate signed a more extensive order prepared by father's attorney. (That the magistrate signed this order, instead of one drafted by mother's attorney, raises procedural issues that I discuss below.)

26

Significantly, this order did not cite section 14-10-129(1)(b)(I) and concluded that "the moving party [mother] cannot utilize the emergency measures to seek the more generalized grounds of parenting restriction." It further concluded that mother "did not bring any evidence of specific acts or omissions by [father] that would lead to imminent physical or emotional danger." The magistrate also found that the son's five injuries were unusual and would not have occurred if father had properly supervised the son. It also determined that the son experienced "three serious concussions at the hands of" father.

¶ 67    Finally, the court rejected father's assertion that to be imminent, there must be a showing that the alleged harm is near or impending. This is another subject I discuss below.

¶ 68    Nearly three months later, the district court affirmed the magistrate's order. It concluded that the magistrate's February 9 signed minute order "was not a final order or judgment subject to review." Therefore, the district court reviewed only the magistrate's February 26 order, finding that the order restricting father's parenting time was supported by ample evidence. Recognizing the dispute about whether the magistrate had properly signed father's

proposed order, the district court remanded the case to the magistrate to address the parties' motions concerning the form of the order.

¶ 69 Significantly, the district's order referred only to mother's motion under section 14-10-129 to restrict father's parenting time but did not cite the two subsections at issue here or say how, if at all, they relate to one another.

## II. Procedural Issues

¶ 70 In my view, three procedural issues militate in favor of vacating the decisions of the district court and magistrate and remanding the case for further proceedings, if necessary. First, I do not believe the majority's conclusion that mother properly preserved for appellate review the argument that subsection (1)(b)(I) applies automatically to all motions to restrict parenting time under subsection (4) because this argument was not raised by mother until this appeal. Second, the magistrate's signing both a minute order and a more comprehensive order raises issues of finality beyond those addressed by the majority. Third, because I believe the magistrate's oral ruling and written order conflict, I disagree

with the majority that we may consider the magistrate's oral ruling. I discuss each of these issues in turn.

### A. Was the Issue of the Relationship Between Subsections (1)(b)(I) and (4) Preserved for Appeal?

¶ 71    A cardinal rule of appellate procedure is that, subject to a few exceptions not relevant here, an appellate court will not review an issue raised for the first time on appeal. *Est. of Stevenson v. Hollywood Bar & Cafe, Inc.*, 832 P.2d 718, 721 n.5 (Colo. 1992); *Gravina Siding & Windows Co. v. Gravina*, 2022 COA 50, ¶ 85, ___ P.3d ___, ___.

¶ 72    Here, mother's motion to restrict parenting time "pursuant to C.R.S. section 14-10-129(4)" cited that subsection and subsection (1), but did not explain how subsection (1)(b)(I) applied, nor did it assert that a party need allege, but not prove, imminent harm under subsection (4). The magistrate's February 9 minute order cited both subsections, finding that the son was in imminent harm or injury due to father's lack of supervision. However, it did not address, as the majority does, whether subsection (1)(b)(I) applies to all motions to restrict parenting time, including those filed under subsection (4), and did not address whether a parent must allege,

29

but need not prove, that a child is in imminent physical or emotional harm due to the actions of a parent exercising parenting time. While the magistrate's oral ruling announced following the February 9 hearing briefly mentioned the applicability of subsection (1)(b)(I), that ruling should not be given any weight because it conflicts with both its February 9 minute order and its February 26 written order, an issue I discuss below. Significantly, the magistrate's February 26 order (prepared by father) does not cite subsection (1)(b)(I). With respect to subsection (4), that order states that mother "did not bring any evidence of specific acts or omissions by [father] that would lead to imminent physical or emotional danger."

¶ 73 Mother's response to father's motion to review the magistrate's February 26 decision did not mention subsection (1)(b)(I). Rather, it cited only subsection (4) and focused on the evidence of imminent harm that she had presented to the magistrate. It did not address that the February 26 order did not mention subsection (1)(b)(I). Further, mother's response contended that the magistrate's February 9 minute order was a final order under C.R.M. 7. As noted above, the district court's decision reviewing the magistrate's

February 26 order referred only to father's motion based on section 14-10-129; it did not mention subsection (1)(b)(I) or (4) or their relation to one another, and it did not assert that a party must allege, but not prove, imminent harm under subsection (4).

¶ 74    In short, the two premises of the majority opinion — that subsection (1)(b)(I) applies automatically to any motion filed under subsection (4) and that a party must allege, but need not prove, imminent harm under subsection (4) — were not raised as issues by mother before the magistrate or the district court. The district court did not address these issues at all, and, to the extent the magistrate did, he did so in an oral ruling that is contradicted by his written decisions. Accordingly, I believe these issues discussed by the majority were not properly preserved for appeal and, therefore, should not be addressed. *See Est. of Stevenson*, 832 P.2d at 721 n.5.

### B.    Is There a Final, Appealable Order?

¶ 75    The majority rejects mother's contention that the district court's order is not final and appealable because the district court remanded the case to the magistrate to determine whether father's

or mother's proposed order should have been signed. It concludes that the magistrate's February 26 order was final and appealable because the district court lacked authority under C.R.M. 7 to remand the case to the magistrate to answer this question. I agree with mother, albeit for different reasons.

¶ 76   The majority properly notes that, generally, our appellate jurisdiction is limited to review of final judgments or orders. *See In re Marriage of Evans*, 2021 COA 141, ¶ 11, 504 P.3d 988, ___.

¶ 77   Subsection (4) states, as relevant here, that a motion filed under that subsection "shall be heard and ruled upon by the court not later than fourteen days after the day of the filing of the motion." § 14-10-129(4). The district court concluded that the magistrate's signed minute order was arguably a final order subject to review under C.R.M. 7(a)(3). It was heard and ruled on within fourteen days of the filing of the February 1 motion. However, the district court concluded that the signed minute order "was not a final order or judgment subject to review." In my view, the signed minute order was not final and appealable because it contemplated the preparation of an order prepared by mother's attorney. In any event, the February 9 order was not appealed.

¶ 78    Instead, the February 26 order appealed from was ruled on twenty-five days after mother's motion was filed, making it untimely under subsection (4).  Although the parties did not raise this timeliness issue before the magistrate, I conclude it constitutes reversible error.  In *People in Interest of Clinton,* 762 P.2d 1381 (Colo. 1988), the supreme court concluded that failure to comply with a statutory requirement for appointing counsel forthwith in a mental health civil commitment proceeding did not deprive the court of subject matter jurisdiction.  Nevertheless, the court concluded that failure to comply with "an essential statutory condition" may constitute reversible error.  *Id.* at 1389.  The court explained that this requires an evaluation of the deviation from statutory provisions and whether such deviation resulted in prejudice to a party.  *Id.*  In *In re Marriage of Slowinski,* 199 P.3d 48, 52-53 (Colo. App. 2008), *overruled on other grounds by In re Marriage of Wollert,* 2020 CO 47, ¶ 4, 464 P.3d 703, 706, a division of the court of appeals held that the then seven-day limitation (now fourteen days) to hold a hearing and issue a ruling under section 14-10-129(4) was an essential condition of the statute.  It further held that not abiding by the limitation in that case had prejudiced

the father, who had to experience several months of supervised visitation. *Id.* I conclude that the magistrate's February 26 order did not comply with an essential condition of the statute — ruling on a motion under section 14-10-129(4) within fourteen days. I further conclude that this constitutes reversible error because it limited father's constitutional right to the care, custody, and control of his son while he was limited to supervised visitation.

¶ 79 Some may conclude that because subsection (1)(b)(I) applies automatically to any motion filed under subsection (4), the time limitation in subsection (4) does not apply. Reaching this conclusion, however, requires rendering the time limit in subsection (4) a nullity; under the majority's rationale, the time limit in subsection (4) would never apply. *See Slowinski,* 199 P.3d at 53 ("[W]e are not persuaded that father waived his objection to the court's failure to rule within seven days [under the previous version of subsection (4)] by participating in the hearings on mother's motion because the trial court indicated that it was proceeding under both" subsections (1)(b)(I) and (4).).

¶ 80 Accordingly, I would reverse the district court's order because this appeal is from the magistrate's untimely February 26 decision.

I would similarly vacate the magistrate's February 26 order for the reasons discussed above. Further, I would also vacate the magistrate's February 9 order because I agree with the district court that it was not a final, appealable order. By its terms, it directed mother's attorney to draft a proposed order, and a further order was not signed until February 26, well beyond the fourteen days required by section 14-10-129(4).

C. May We Consider the Magistrate's Oral Ruling?

¶ 81 I respectfully disagree with the majority's conclusion that we may view the magistrate's oral ruling as supplementing his written minute order. There are two problems with this conclusion. First, this appeal concerns the magistrate's February 26 decision, not his February 9 minute order or the oral ruling accompanying it. Second, the magistrate's February 26 ruling does not supplement his February 9 oral ruling; it conflicts with it. As noted, the February 9 oral ruling briefly discusses the applicability of subsection (1)(b)(I), but the February 26 written decision does not cite that subsection, much less discuss it.

¶ 82 This issue is significant because the majority relies on the magistrate's oral ruling to explain its analysis that mother's motion

35

embraced both subsections (1)(b)(I) and (4).  However, if the magistrate's oral ruling is not considered, we are reviewing only the magistrate's February 26 written decision, which does not mention subsection (1)(b)(I), and the district court's decision, which only cites generally to section 14-10-129.

¶ 83    Generally, a written order prevails over a conflicting oral ruling.  *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 16, 486 P.3d 1201, 1205; *Thyssenkrupp Safway, Inc. v. Hyland Hills Parks & Recreation Dist.*, 271 P.3d 587, 589 (Colo. App. 2011).  Thus, the magistrate's February 26 written ruling is what we are reviewing on appeal in part, not the magistrate's February 9 written minute order or his oral ruling accompanying it.

¶ 84    Further, the case on which the majority relies in concluding that the magistrate's oral ruling supplements the written order is distinguishable.  In *Friends of Denver Parks, Inc. v. City & County of Denver*, 2013 COA 177, ¶¶ 34-37, 327 P.3d 311, 316, a division of this court concluded that a district court's oral ruling on a preliminary injunction satisfactorily supplemented the court's written ruling.  However, the division did not address the rule that a

written order generally prevails over a conflicting oral ruling, and, thus, the division's holding is inapplicable here.

¶ 85　Accordingly, I would conclude that we should not consider the magistrate's oral ruling.

### III.　The Merits

¶ 86　Even if I assume that these procedural issues do not warrant vacating the district court's decision or dismissing this appeal, I disagree with the majority's statutory interpretation. Specifically, I do not agree with the majority's conclusions that (1) when a motion is filed under subsection (4), the movant must allege but need not prove imminent harm to a child; and (2) if a motion sufficiently alleges imminent harm, the court applies subsection (1)(b)(I)'s general endangerment standard. After setting forth the standard of review and applicable law, I will discuss each issue in turn.

### A.　Standard of Review and Applicable Law

¶ 87　I agree with the majority that we must accept the magistrate's factual findings unless they are clearly erroneous. *In re Marriage of Young*, 2021 COA 96, ¶ 8, 497 P.3d 524, 528.

¶ 88　However, the interpretation of a statute is an issue of law that we review de novo. *In re Marriage of Wollert*, ¶ 20, 464 P.3d at 709.

When interpreting a statute, we must find and give effect to the legislative intent. *Id.* To ascertain the legislative intent, we look first to the language of the statute, giving words and phrases their plain and ordinary meanings. *Id.*; § 2-4-101, C.R.S. 2021 ("Words and phrase shall be read in context and construed according to the rules of grammar and common usage."). If the language is clear, we apply the statute as written without resorting to other tools of statutory construction. *In re Marriage of Wollert*, ¶ 20, 464 P.3d at 709.

¶ 89     Mother's motion was filed under subsection (4) of section 14-10-129, which provides in relevant part as follows:

> A motion to restrict parenting time or parental contact with a parent which alleges that the child is in imminent physical or emotional danger due to the parenting time or contact by the parent shall be heard and ruled upon by the court not later than fourteen days after the day of the filing of the motion.

¶ 90     Subsection (1)(b)(I), referred to as the endangerment standard, states,

> The court shall not restrict a parent's parenting time rights unless it finds that the parenting time would endanger the child's physical health or significantly impair the child's emotional development. In addition to

38

a finding that parenting time would endanger the child's physical health or significantly impair the child's emotional development, in any order imposing or continuing a parenting time restriction, the court shall enumerate the specific factual findings supporting the restriction.

## B.     Is Proof of Imminent Harm Necessary?

¶ 91     Father contends that the magistrate used an incorrect definition of "imminent" when restricting his parenting time under subsection (4).  I agree.

¶ 92     Imminent has been defined as "threatening to occur immediately" or "[a]bout to take place."  Black's Law Dictionary 898 (11th ed. 2019).  Similarly, that dictionary defines "immediate" as "[o]ccurring without delay; instant."  *Id.* at 897.

¶ 93     In contrast, the magistrate applied a definition of imminent that is contrary to the word's plain meaning.  He explained,

> "Imminent" in this context does not connote any form of immediacy.  Rather, it is the certainty of the harm happening whether it is days, weeks, or months in the future.  It is not a question of "if" but "when" in this case.  It does not matter if the "when" is an unspecific sometime in the future.

¶ 94     By defining "imminent" without any notion of immediacy, the magistrate paraphrased the definition of "endanger," the term used

39

in subsection (1)(b)(I). Endanger means "to bring into danger or peril" or "to create a dangerous situation." Merriam-Webster Dictionary, https://perma.cc/AK8Z-RZUS. Merriam-Webster's examples illustrate the difference between "endanger" and "imminent." One example states, "[p]arents feared that the dog could *endanger* their children." *Id.* The other example says, "[t]he severe drought has *endangered* crops throughout the area." *Id.* Both examples illustrate situations where potential danger exists but is not likely to occur immediately.

¶ 95    Consequently, a situation that endangers reasonably causes concern, but it does not involve a danger expected to occur instantly. Because the magistrate used an incorrect definition of "imminent harm," I conclude that he improperly restricted father's parenting time.

C.    The Relationship Between Subsections (1)(b)(1) and (4)

¶ 96    This difference in terms is crucial to understanding the relationship between subsections (1)(b)(I) and (4) for several reasons. First, to the extent the majority is correct in asserting that a movant must allege, but need not prove, that a child is in imminent danger in a motion brought under subsection (4),

40

employing an incorrect definition of "imminent" necessarily results in a flawed conclusion regarding the sufficiency of the motion's allegations. Here, for example, mother alleged that the son had been subject to several head injuries during an eighteen-month period. She did not allege that the son was in imminent physical danger.

¶ 97 Second, subsection (4) presumes that a court must find that an existing parenting time order would place a child in imminent physical or emotional danger. Otherwise, any parent, especially one involved in a longstanding, post-dissolution of marriage conflict, could easily curtail the other parent's parenting time by simply alleging imminent harm. The requirement that a court must impose attorney fees and costs under subsection (5) against a parent who files a frivolous motion to restrict parenting time would not necessarily discourage this practice because contentious, post-dissolution disputes seldom involve black-and-white issues.

¶ 98 Third, subsection (4) makes no reference to subsection (1)(b)(I), and that section makes no reference to subsection (4). If the General Assembly had intended all motions filed under subsection (4) with sufficient particularity to automatically trigger the

application of subsection (1)(b)(I), it would have said so. Instead, the language in subsection (1)(b)(I) requiring the court to enumerate its specific factual findings "in any order imposing or continuing a parenting time restriction" must be construed together with the first part of that sentence, which applies "[i]n addition to a finding that parenting time would endanger the child's physical health or significantly impair the child's emotional development." § 14-10-129(1)(b)(I). The latter phrase, of course, is the standard applicable to motions brought under subsection (1)(b)(I), not those under subsection (4).

¶ 99 I do not agree that an express finding of imminence would be moot when the court holds a hearing under subsection (4) because a temporary parenting time restriction has already been in place. If a court were to conclude that the moving parent had not established imminent harm, an express finding of lack of imminence would not be moot but would result in the denial of the motion.

¶ 100 Contrary to the majority's concern that a court's finding of endangerment without imminence would force the court to return a child to a dangerous situation, that circumstance would not occur

under my reading of the statutory scheme. Rather, at a hearing on a motion filed under subsection (4), the court would only determine whether a child is subject to "imminent physical or emotional danger." If this standard is not met, the court could determine whether the endangerment standard had been met under a previously or subsequently filed motion. The latter motion would not need to be heard and ruled on within fourteen days of the date of its filing, and it would allow the parties to undertake discovery and call more witnesses than would be possible when an emergency hearing is scheduled under subsection (4). Here, for example, father presented in his petition for review to the district court a Department of Human Services report concluding that mother's allegations were unfounded. Because this report was not issued until nine days after the emergency hearing, father could not present it then, and, subsequently, the district court declined to consider it. Had mother filed a motion under subsection (1)(b)(I), father could have called the author of the report and sought to refute any allegations of endangerment proffered by mother.

¶ 101    The supreme court's recent decision in *In re Marriage of Wollert* does not require a contrary conclusion. There, the supreme

court addressed when a motion to restrict parenting time under subsection (4) requires a hearing to be held within fourteen days of the filing of the motion. *In re Marriage of Wollert*, ¶ 2, 464 P.3d at 706. Overruling *Slowinski*, 199 P.3d 48, in part, the court held that the particularity requirement of C.R.C.P. 7(b)(1) is the proper standard to review a motion under subsection (4). *Id.* at ¶ 4, 464 P.3d at 706. Although *In re Marriage of Wollert* concerned a disputatious dissolution of marriage case that had been active for fourteen years, the supreme court nevertheless concluded that the allegations of the subsection (4) motion were sufficient, relying on an allegation in the motion that a therapist had opined that the child there was in "imminent psychological and emotional danger." *Id.* at ¶ 35, 464 P.3d at 712. Here, in contrast, mother's motion contained no allegation of imminent physical or emotional danger.

¶ 102   While the supreme court stated that subsection (4) "requires a party to allege, not prove, imminent physical or emotional danger," *id.* at ¶ 36, 464 P.3d at 712, that statement is clearly dicta because the supreme court only ruled on the standard needed to trigger a hearing under subsection (4). *See People v. Stellabotte*, 2018 CO

44

66, ¶ 28, 421 P.3d 174, 179-80 (statements that are dicta do not govern in a subsequent case).

## IV.   Conclusion

¶ 103   For both the procedural and substantive reasons stated above, I would reverse the district court's order.